[Crim. No. 4750. Fifth Dist. Apr. 15, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID RUSSELL ELSTON, Defendant and Appellant.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Mark L. Christiansen, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Jane Kirkland Fischer, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CANTWELL, J.*—On September 15, 1979, appellant David Russell Elston was arrested for felony child abuse (Pen. Code, § 273d). On September 24, 1979, appellant waived his right to a preliminary examination in the Justice Court of Mariposa County.

An information (No. 671) charging felony child abuse was thereafter filed in the Mariposa County Superior Court on September 24, 1979, and arraignment thereon was set for 5 p.m. that same day.

At arraignment, the superior court appointed the same attorney to represent both appellant and his codefendant Donna Sue Brown.

Appellant and Brown were not informed of their right to separate counsel in the event of a potential conflict, nor did the court inquire into the propriety of joint representation.

Both defendants were arraigned, waived their right to a jury, and pleaded not guilty by reason of insanity. The court appointed two psychiatrists to examine each of the defendants and to report to the court as to their sanity at the time of the offense.

On October 26, 1979, appellant and Brown waived their right to a jury trial on the insanity issue and stipulated that the issue could be submitted on the basis of the two psychiatric evaluations. The court found that both appellant and Brown were legally sane at the time of the commission of the offense and therefore found them each guilty.

On November 9, 1979, the court denied probation and sentenced appellant to state prison for the maximum term of three years. A timely notice of appeal followed.

STATEMENT OF FACTS

On September 15, 1979, appellant David Russell Elston and Donna Sue Brown, a couple living together, were arrested by the Mariposa County Sheriff's office following a report that Nathan, the 18-month-old son of Ms. Brown, was being abused. The incriminatory circumstances against appellant and his codefendant consisted of Nathan's

_____

*Assigned by the Chairperson of the Judicial Council.

physical condition and the defendants' statements. Nathan's person co-piously bespoke both abuse and neglect. He had a large bruise on his face and numerous other marked bruises on his back, arms, legs, but-tocks and thighs. There appeared to be bite marks on his nose, waist and ankle. His nose and mouth were covered with scabs.

The medical report accompanying the probation report contained the notation, "other faded bruises of [sic] all parts of body." Nathan was hospitalized for 10 days.

When questioned on September 15, 1979, appellant indicated the child had fallen from a porch, that the facial sores resulted from the child's having been bitten by ants, that appellant's responsibility for Nathan's condition consisted of possibly having bitten him during play, having spanked Nathan once and possibly having bruised Nathan's shoulder when he grabbed him. Appellant stated that he spanked Na-than only to discipline him. He admitted that it was his fault the child had received no medical attention. In contrast, Ms. Brown admitted she had caused the large bruise on the right side of his head, that she hit Nathan to "try and shut him up," that she had knocked him down and that she had spanked and hit Nathan approximately five times in the past ten days. She also accused appellant of having spanked Nathan five to six times in the past seven days.[1]

Thereafter, the codefendants' respective admissions and accusations against each other shifted at each reported instance.

[1]The court takes judicial notice, pursuant to Evidence Code section 452, subdivision (d), of the following Mariposa County Superior Court records:
1. Probation report on Donna Brown.
2. Commitment to county jail for Donna Brown.
Evidence Code section 452, subdivision (d), provides: "Judicial notice may be taken of the following matters to the extent that they are not embraced within section 451:
". . . . . . . . . . . . . .
"(d) Records of (1) any court of this state or (2) any court of record of the United States or of any state of the United States."
Appellant has supplied certified copies of the two documents to his request for judici-al notice. The probation report of Donna Sue Brown is important to this appeal, as the issues relate to differences in the probation report for Donna Sue Brown from that of appellant which counsel could have attacked at the sentencing phase but did not. Be-cause the Brown probation report contains the signature of the sentencing judge and his attestation that he had read it dated November 8, 1979, it is apparent that he had read this report as well as appellant's probation report prior to sentencing appellant on No-vember 9, 1979. Therefore, it is appropriate for the court to exercise its discretion to take judicial notice of these documents. (See People v. Preslie (1977) 70 Cal.App.3d 486, 492-495 [138 Cal.Rptr. 828].)

At the September 24, 1979, arraignment, each defendant entered a plea of not guilty by reason of insanity. Each defendant also acknowledged the plea was an admission of the accusation. Appellant admitted that he beat the child so severely as to put the child in the hospital. Ms. Brown's response to whether she had similarly beaten the child was, "to a certain extent, yes." When pressed to state specifically what part she played in the apparent beating of her son, Brown stated initially that she "didn't take him to the hospital when he fell off the back porch." She then stated, "I slapped him. I banged him around, I bruised the side of his face," and she admitted inflicting the bruises on Nathan's shoulders.

Appellant specifically admitted inflicting the wounds on the child's rear and the bite marks.

In the respective statements to probation officers, appellant admitted striking the child severely only once, although he did admit inflicting two or three bite marks in play. He also stated that he and Brown were preparing to take Nathan to the hospital on the morning he was arrested. Brown at that time characterized the proceedings as a "bum rap." She said that she and appellant had not done all the things they were accused of doing, that they had not beaten the child and that she and appellant were guilty only of not taking him to the hospital for necessary medical care.

The reports of two court-appointed psychiatrists concluded that each of the defendants was legally sane at the time of the commission of the offense. One report, however, expressed doubt as to whether appellant had the substantial capacity to conform his conduct to the requirements of the law. Although concluding that appellant was legally sane, Dr. Brannan observed that appellant may have "an explosive personality," diminishing appellant's ability to "conform his conduct [to the requirements of the law]." Dr. Brannan recommended further personality tests and an EEG to complete the record.

Dr. Lloyd's psychiatric evaluation of appellant also concluded that he was legally sane at the time of the offense. The evaluation did note, however, that appellant was diagnosed as having a schizoid personality in 1976. Dr. Lloyd also concluded, in part: "[¶] Although I am convinced that the defendant was legally sane ... I am convinced that he has significant emotional problems which contribute to his tendency to abuse young children."

The probation report concerning appellant listed four circumstances in aggravation and stated that "There appears [*sic*] to be no circumstances in mitigation." The probation officer's conclusions recommended that appellant be sentenced to state prison for the upper term. Appellant's probation report further noted appellant's involvement in a prior episode involving child molestation and abuse in which the child apparently later died. The report also stated that appellant left the state, was returned to California in connection with the prior charges, and had been released on bail pending charges on two counts of perjury. Those charges were pending at the time of the instant offense.

The probation report noted, "The nature and seriousness and circumstances of child abuse is very, very serious." The cruelty of the abuse and the failure to take the child to the hospital, the victim's vulnerability, the defendant's prior criminal involvement, and a suggestion that he "induced" Ms. Brown to participate in the abuse were listed as aggravating circumstances in appellant's probation report. The only aggravating circumstance listed in Ms. Brown's report was the victim's vulnerability. Mitigating factors listed for her included: "[t]he defendant was a passive participant and played a minor role in the crime"; that she had no prior record, that she voluntarily admitted wrongdoing at an early stage and that she would have taken the child to a doctor but for her fear that the doctor would discover appellant was involved in another child abuse case and appellant would be arrested.

The probation officer recommended Ms. Brown be placed on felony probation for two years, with one year in the county jail. She was so sentenced. The remarks, if any, of counsel in Ms. Brown's behalf at sentencing have not been transcribed. As to appellant, however, counsel made no presentation or objection to any of the findings or conclusions of the probation report, except to argue for a 90-day study pursuant to Penal Code section 1203.03. The study request was premised on the psychiatric reports' indications that appellant had serious personality and emotional disturbances.

The court, in determining whether probation was warranted for appellant, stated that it considered the indication in the psychiatric reports that he "does have a problem that makes him a danger to others . . . ." The court then listed the circumstances in aggravation which were considered and stated that it agreed with the probation report's conclusion "that there are no circumstances in mitigation." The court denied probation and sentenced appellant to the upper term of three years.

Appellant raises three issues. First, he contends the trial court erred in failing to advise him of his right to separate counsel. Second, he contends joint representation of him and his codefendant by one attorney denied him effective assistance of counsel. Finally, he cites as error the court's failure to recognize appellant's mental condition as a mitigating factor.

Because the conviction must be reversed by reason of conflict arising between the codefendants, we need not address appellant's contentions regarding the court's alleged failure to consider his mental condition as a mitigating circumstance.

Initially, we consider appellant's contention that the trial court erred in failing to advise defendants they had a right to separate counsel, free from any potential conflict of interest.

This court summarized the applicable principles for evaluating this contention in *People* v. *Angulo* (1978) 85 Cal.App.3d 514 [148 Cal.Rptr. 517]: "The constitutional right of multiple defendants to effective counsel, including separate counsel where necessary, was considered by our Supreme Court in the case of *People* v. *Chacon* (1968) 69 Cal.2d 765 .... There the court said (at p. 773): 'The right to counsel at trial guaranteed by the Sixth Amendment of the United States Constitution [citation] and article I, section 13 of the California Constitution does not include an automatic right to separate counsel for each codefendant. One counsel may represent more than one defendant so long as the representation is effective. [Citation.] Effective assistance of counsel is assistance "untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." [Citations.] If counsel must represent conflicting interests or is ineffective because of the burdens of representing more than one defendant, the injured defendant has been denied his constitutional right to effective counsel. [Citations.]'

"In *Chacon*, the Supreme Court also makes it clear that absent advice of the right to separate counsel, a waiver cannot be presumed from silence.

"'If defendants were denied the right to effective representation of counsel, we cannot presume that the right was waived by a failure to request separate counsel. The court did not advise them of their right to separate counsel if a conflict was present, and we cannot imply from

their silence a waiver of that right. [Citations.]' (*People* v. *Chacon, supra*, 69 Cal.2d at p. 774.)

"It is further the rule that if the codefendants have not been informed of their right to separate counsel in the event of a potential conflict of interest between them, and if the record later indicates that there was an actual conflict of interest, the matter of separate counsel may be reviewed on appeal. 'And, significantly, the appellate court may use hindsight to ascertain whether or not there was an actual conflict of interest and, if so, whether appellant was injured (*People* v. *George* [1968] 259 Cal.App.2d 424, 432 ...).' (*People* v. *Mitchell* (1969) 1 Cal.App.3d 35, 38 ...; fn. omitted.)" (*People* v. *Angulo, supra*, 85 Cal.App.3d at pp. 518-519.)

■ With these principles in mind, we consider appellant's contention that the trial court erred in failing to advise appellant of his right to separate counsel in the event of a conflict of interest with codefendant Brown.

The California authorities suggest that an inquiry into potential conflict of interest "is highly recommended as appropriate trial court procedure." (*People* v. *Cook* (1975) 13 Cal.3d 663, 672, fn. 7 [119 Cal.Rptr. 500, 532 P.2d 148].) *Cook* does elaborate, "When a trial court undertakes to appoint counsel for indigent codefendants [citation], it must assume the burden of assuring that its appointment does not result in a denial of effective counsel because of some possible conflict. [Citations.]" (*Id.*, at p. 671.) Although we can find no California case which squarely holds that such inquiry is required, the United States Supreme Court in *Wood* v. *Georgia* (1981) 450 U.S. 261 [67 L.Ed.2d 220, 101 S.Ct. 1097] recently has held the trial court's failure to inquire into the existence of an actual conflict of interest to be error where the record demonstrated that the *possibility* of a conflict of interest was sufficiently apparent at the time of the hearing below to impose upon the court a duty to inquire further. (*Id.*, at p. 272.) The court vacated the judgment and remanded to the state court with instructions to hold a hearing to determine whether an actual conflict existed. The court noted, moreover, that its prior decision in *Cuyler* v. *Sullivan* (1980) 446 U.S. 335 [64 L.Ed.2d 333, 100 S.Ct. 1708] "*mandates* a reversal when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists.' *Id.*, at 347." (*Wood* v. *Georgia, supra*, at p. 272, fn. 18 [67 L.Ed.2d at p. 231, 101 S.Ct. at p. 1104].)

Because the record in this case clearly shows that a conflict existed in joint counsel's representation of appellant and Brown (as set forth below), the trial court erred in failing to conduct an inquiry when faced at the outset with the possibility of conflict. However, as we have determined that the record discloses the existence of an actual conflict of interest, no purpose would be served by remanding for a hearing on this issue.

We now turn to the dispositive issue in the matter. Preliminarily, it is established that "[a]n attorney's joint representation of multiple defendants ... may affect a criminal defendant adversely not only during the jury trial on the issue of guilt, but at any stage of a criminal proceeding." (*United States* v. *Mavrick* (7th Cir. 1979) 601 F.2d 921, 931; *Holloway* v. *Arkansas* (1978) 435 U.S. 475, 489-490 [55 L.Ed.2d 426, 98 S.Ct. 1173].)

The failure of appellant to raise an objection in the trial court does not limit his rights upon review. He can only be held to have waived his right to separate counsel upon a proper advisement thereof. (*People* v. *Thompson* (1970) 13 Cal.App.3d 47, 54 [91 Cal.Rptr. 341].) *Thompson* further explains: "What will qualify as a conflict of interest is an illusive concept. In *Chacon* it is held that a conflict necessarily exists when a jury has to fix the penalty for more than one defendant (69 Cal.2d at p. 775). In *People* v. *Odom* [1965] 236 Cal.App.2d 876, 878 [46 Cal.Rptr. 453], there are set out examples of situations where courts have discerned conflicts: 'Conflicts of interest among codefendants may arise when it would profit one defendant to attack the credibility of another [citation]; when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another [citation]; when one defendant has a record of prior felony convictions and the others do not [citation]; when the defenses of codefendants are factually inconsistent [citation]; or when appointed counsel believes a conflict of interest may exist [citations].'" (*Id.*, at p. 55.)

The preceding enumeration lists six instances of conflict of interest. Each of the first five categories occurred in this action.[2] We examine them in the sequence they are presented in *Thompson.*

---

[2]Because we conclude that the record discloses an actual conflict adversely affecting counsel's performance, we need not address appellant's additional contention that the differing psychiatric evaluations of appellant and Brown raised a potential conflict inso-

1. *Penalties.*

At sentencing, the trier of fact had to fix penalties for both defendants. A single attorney undertook to represent both defendants as to the quantum of penalty. Notwithstanding appellant's persistent claim that the child's injuries were either accidental in origin or the outcome of privileged discipline, the probation officer's report placed principal responsibility for the child's condition on appellant and minimized Brown's responsibility. It appears from the record that appellant could have attacked the probation report's allocation of responsibility and its disparate sentencing recommendation. As the court stated in *People* v. *Chacon* (1968) 69 Cal.2d 765, 774-775 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454]: "If counsel must represent conflicting interests or is ineffective because of the burdens of representing more than one defendant, the injured defendant has been denied his constitutional right to effective counsel. [Citations.]

". . . . . . . . . . . . . . .

"Conflicts of interest necessarily exist when the jury must fix the penalty for more than one defendant. Often the strongest argument that separate counsel can make on the issue of penalty is that his client was less culpable than the others .... In addition, he must be free to stress particular mitigating elements in his client's background or other individual mitigating factors that may not apply to a codefendant. Counsel representing more than one defendant is necessarily inhibited in making such arguments and in presenting evidence to support them. He cannot simultaneously argue with any semblance of effectiveness that each defendant is most deserving of the lesser penalty."

Although *Chacon* speaks of sentencing conflict when the jury fixes the penalty, the same conflict is present where the judge fixes the penalty. Arguably, a judge should be more able than a jury to impose sentences independently, discounting evidence favorable to one defendant in sentencing another. However, the question is not whether the judge could accurately sentence each defendant, but whether joint counsel would be prevented from adequately protecting each individual defendant by raising arguments regarding their relative involvement.

far as they provide a basis for speculation that the facts underlying the not-guilty-by-reason-of-insanity pleas were significantly different and that appellant could have benefited from the presentation of additional evidence.

(See Note, People v. Chacon: *Additional but Inadequate Protection for the Right to Separate Counsel* (1969) 16 UCLA L.Rev. 626, 635-636.)

### 2. *Credibility Attack.*

Each defendant's statements concerning the origin of the child abuse was an affront to the other's credibility. The codefendant Brown had made sufficient admissions to justify appellant's counsel contending the child abuse was primarily her responsibility. For example, Dr. Lloyd's psychiatric report contains a description of the following exchange:

"I asked Ms. Brown if Dave had ever abused Nathan. She replied, 'Not really.' She said that he would discipline Nathan by spanking him if he got off the porch. She recalled that Dave 'spanked him after he shit on the couch.' She mentioned an incident in which Dave was holding him up on the front porch nibbling on his legs. He almost dropped him and he bit down on his leg too hard. . . .

"I asked Ms. Brown about her own treatment of Nathan. She replied as follows. 'I hit Nathan. He'd sit and scream. The only way I could get him to shut up was to hit him. I guess I hit him a little too hard a couple times. He really got on my nerves. I was jealous of him. Dave would pay attention to him. Everytime we'd make love, as soon as we were finished, he'd get up and check on Nathan. I was jealous. I thought Nathan was taking him away from me. I couldn't handle that. Dave never saw me hit Nathan. I always waited until he was gone or outside or something. I really felt like Nathan was taking him away from me. He's the only man I've ever loved. I was afraid I'd lose him. I still am.'" Such statements were consistent with appellant's statements that he only spanked Nathan hard once for the couch incident and that the bite marks began as play. Counsel could have used such statements to shift primary blame to Brown. Counsel wholly refrained from assisting appellant by attacking Brown's credibility.

### 3. *Summation Restriction.*

Counsel's presentation on appellant's behalf was limited to a request for a diagnostic study pursuant to Penal Code section 1203.03. He made no mention of the numerous circumstances implicating Ms. Brown as the chief perpetrator of abuse on Nathan, such as her admis-

sions to that effect and the circumstances in her personal history implying the child abuse preceded appellant's acceptance into her household. Counsel having sole loyalty to appellant would have noted that appellant arguably had been in the home for only a few weeks and that the child abuse shown by Nathan's person reasonably indicated the abuse predated appellant's liaison with Brown.[3] Such counsel would have also pointed out that the Brannan psychiatric report indicated Brown admitted that as Nathan got older he "got on her nerves," that she had "decided she was not good for the baby" and that she "was afraid she would hurt him."

While such an after-the-fact analysis may initially appear unfair to the trial court, such matters are governed by the principle that "'. . . the appellate court may use hindsight to ascertain whether or not there was an actual conflict of interest and, if so, whether appellant was injured (*People* v. *George* [1968] 259 Cal.App.2d 424, 432 . . . .)' (*People* v. *Mitchell* (1969) 1 Cal.App.3d 35, 38 . . .; fn. omitted.)" (*People* v. *Angulo, supra*, 85 Cal.App.3d at p. 519.)

### 4. *Disparate Criminal Records.*

The trial court considered appellant's alleged involvement in a prior incident of child abuse and the pending perjury charges as a factor indicating his dangerousness. Brown had no prior record of criminal involvement. This placed counsel in the position of representing codefendants whose prior criminal histories materially varied. Significantly, counsel at no time noted to the trial court that any criminality attaching to appellant's departure to Oklahoma or to the perjury charges pending in Kings County were matters yet to be adjudicated.

### 5. *Factually Inconsistent Defenses.*

Neither defendant at any time suggested Nathan's condition was caused by the actions of some other aggressor. Appellant had colorable defenses of accident, misfortune and Brown's behavior. Brown had similar potential defenses. Each defense rested upon contradictory and inconsistent interpretation of the facts.

---

[3]Brown stated to the probation officer that appellant had moved in with her in mid-July or August and to Dr. Lloyd that he had moved in toward the end of July.

Thus, under the circumstances, we conclude that an actual[4] conflict of interest was generated by joint representation in this case and that such joint representation herein deprived appellant of effective representation. Where appellant shows an *actual* conflict, reversal is automatic.

"*Glasser* [v. *United States* (1942) 315 U.S. 60, 76, (86 L.Ed. 680, 702, 62 S.Ct. 457, 467)] established that unconstitutional multiple representation is never harmless error. Once the Court concluded that Glasser's lawyer had an actual conflict of interest, it refused 'to indulge in nice calculations as to the amount of prejudice' attributable to the conflict. The conflict itself demonstrated a denial of the 'right to have the effective assistance of counsel.' 315 U.S., at 76. Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. See *Holloway, supra,* [435 U.S.] at 487-491." (*Cuyler* v. *Sullivan, supra,* 446 U.S. 335, 349-350 [64 L.Ed.2d 333, 347-348, 100 S.Ct. 1708, 1719].)

The judgment of conviction is reversed.

Hanson (P. D.), Acting P. J., and Andreen, J., concurred.

---

[4]This satisfies the test of an actual conflict of interest set forth in *Cuyler* v. *Sullivan, supra,* 446 U.S. 335 [64 L.Ed.2d 333, 100 S.Ct. 1708] which Justice Marshall there states to be differentiated between possibility of conflict by this distinction: "There is a possibility of conflict, then, if the interests of the defendants may diverge at some point so as to place the attorney under inconsistent duties. There is an actual, relevant conflict of interests if, during the course of the representation, the defendants' interests do diverge with respect to a material factual or legal issue or to a course of action." (*Id.,* at p. 356 fn. 3 [64 L.Ed.2d at pp. 351-352, 100 S.Ct. at p. 1722] (conc. and dis. opn. of Marshall, J.).)

We need not, therefore, decide if *Cuyler* independently, or when read with *People* v. *Barboza* (1981) 29 Cal.3d 375 [173 Cal.Rptr. 458, 627 P.2d 188], vitiates the traditional California approach mandating reversal where "informed speculation" based upon the record establishes that there was a potential conflict of interest which prejudicially affected appellant's right to effective counsel.