[Crim. No. 13263. Third Dist. Nov. 6, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
CATHY L. SANFORD et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*See footnote 2, *post,* page 15.

**14**

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, Roy M. Dahlberg, Deputy State Public Defender, Leo Paoli and Robert McDermand III for Defendants and Appellants.

William Logan as Amicus Curiae on behalf of Defendants and Appellants.

John K. Van de Kamp, Attorney General, James T. McNally and Ruth M. Saavedra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BLEASE, J.**—Defendants Bill Warren and Cathy L. Sanford were convicted, after a jury trial, of unlawful possession of marijuana (former Health & Saf. Code, § 11357).[1] Defendant Bill Sanford was also convicted of two counts of sale of marijuana (Health & Saf. Code, § 11360, subd. (a)). Each defendant appeals from an order granting probation. In the published portion of this opinion we discuss the contentions of defendant Bill Sanford. He contends the trial court erred in permitting one attorney to represent him

---

[1]The text of the former statute may be found at Statutes of 1976, chapter 1139. All references to Health and Safety Code section 11357 hereafter are to the former statute.

and Cathy Sanford despite a claimed conflict. He also contends that the trial court erred in failing to inform him that if he were unable to afford independent representation the second attorney would be appointed by the court. We will affirm the orders of probation.[2]

## FACTS

Bill and Cathy Sanford are husband and wife. Acting on an anonymous tip, Michelle White, a police agent, went to the Sanford home on December 1, 1982. Bill Sanford answered the door and White asked if he were "Bill." He said yes. She said that a friend told her she might be able to purchase some marijuana from him. He invited her in and sold her a quarter-ounce baggie of marijuana for $25. On December 8, 1982, White returned to the Sanford residence and made an identical purchase.

On December 15, 1982, several police officers searched the Sanford residence under the authority of a search warrant. They found paraphernalia for use of marijuana, a scale calibrated in grams in association with an assortment of plastic baggies, and, at various places in the house, marijuana. The aggregate weight of the marijuana is 271 grams, an amount in excess of 8½ ounces.

Two informations resulted from these events. One information alleged that each defendant had violated Health and Safety Code section 11359 by having marijuana in their possession for the purpose of sale. The other alleged two counts of sale of marijuana by Bill Sanford, based on his transactions with White. These informations were consolidated for trial.

At the outset of trial the court raised the possibility of a conflict of interest with the defendants' retained attorney. It inquired of each defendant if they knew they were entitled to separate representation. Each answered yes. The court said that it was unaware of the nature of the defenses to be offered and whether they would be contradictory and asked if defendants were willing to waive any problem in that regard. Defendant Cathy Sanford said yes. The prosecutor interrupted to say that he had been informed that the conflict was actual and not potential. The court asked defense counsel if that were the case. Defense counsel replied: "Yes, your Honor. It comes about in this sense. Whenever two parties are represented by the same attorney in fact they withdraw a potential defense, each withdraws the opportunity to accuse the other in effect. In that sense, it's more than an abstraction or a theoretical conflict. There's a conflict of interest, and as I understand it,

---

[2]The Reporter of Decisions is directed to publish all portions of this opinion except parts II and III of the Discussion.

they have waived it, but I certainly think it's a good idea to put it on the record, that they understand the origin and what we mean by conflict of interest, but it's not an abstraction, it's a reality." The court asked the defendants if, in view of what their counsel had said, they were "willing to waive any possible or actual conflict of interest and have one attorney represent [them] in this case." Each answered in the affirmative.

DISCUSSION

I

Defendant Bill Sanford contends that the trial court erred in permitting one attorney to represent him and his wife. He argues that his waiver of conflict is ineffectual because the trial court was informed there was an actual conflict of interest between the defendants. He also argues that the waiver is insufficient because he was not informed that, if indigent, separate counsel would be appointed at government expense. The first argument fails because no actual conflict is shown. The second argument fails because no such admonition was required and for absence of a showing of prejudice.

■ Representation by one counsel of more than one defendant in a criminal case is not prohibited in all cases. (*People* v. *Mroczko* (1983) 35 Cal.3d 86, 103 [197 Cal.Rptr. 52, 672 P.2d 835].) However, a conflict of interest may arise if the defendants' interests diverge with respect to a material factual or legal issue or mode of defense. (See *People* v. *Odom* (1965) 236 Cal.App.2d 876, 878 [46 Cal.Rptr. 453].) ■ The trial court must be wary of such conflicts for it has a duty to prevent an actual conflict from marring the integrity of the criminal law process, regardless of the whimsy of the defendant. ■ "[T]he trial court [has] power to act when an actual conflict materializes during the proceedings, producing an obviously deficient performance. ■ Then the court's power and duty to ensure fairness and preserve the credibility of its judgments extends to recusal even when an informed defendant, for whatever reason, is cooperating in counsel's tactics." (*Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 619, fn. 10 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333]; see also *Mroczko, supra,* 35 Cal.3d at p. 110, fn. 26.)

■ Where one attorney is appointed by the court to jointly represent defendants the trial court "must assume the burden of assuring that its appointment does not result in a denial of effective counsel because of some possible conflict." (*People* v. *Cook* (1975) 13 Cal.3d 663, 671 [119 Cal.Rptr. 500, 532 P.2d 148].) In aid of this requirement the California Supreme Court in *Mroczko, supra,* promulgated the rule that when the trial

court appoints counsel it must initially select independent counsel for each defendant. (35 Cal.3d at p. 115.)

■ When defendants select and retain their own counsel the situation is more delicate. Defendants' right to retain counsel of their choice is implicated. Indiscreet inquiries may infringe upon this right as well as defendants' rights against self-incrimination. (See, e.g., *Cook, supra,* 13 Cal.3d at pp. 671-672.) ■ Nonetheless, *Cook* recommends that when confronted with a jointly retained counsel the court should (1) inquire whether defendants and their counsel have considered the possibly damaging effect of a potential conflict, and (2) admonish the defendants that if a conflict exists each might better be represented by separate counsel. (*Id.,* at p. 672, fn. 7.)[3]

■ This approach is inapplicable, however, when the issue of a conflict affecting retained counsel is raised by counsel or a party. (See *Maxwell, supra,* 30 Cal.3d at pp. 619-620, esp. fn. 12.) *Maxwell* notes that in *Cook* "the issue of waiver was not confronted." (*Id.,* at p. 620, fn. 12.) When the issue is raised by defense counsel or a defendant the court must obtain a knowing and intelligent waiver on the record of defendants' constitutional rights to effective assistance of counsel. (See *id.,* at pp. 619-622.)

*Maxwell* furnishes no explicit criteria for establishing that a waiver is knowing and intelligent. To the contrary, *Maxwell* states that strict rules are neither necessary nor workable. This is so because of the delicacy of the situation created by tension between the right to determine one's own fate and the right to effective assistance of counsel. (30 Cal.3d at p. 621.) *Maxwell* points to the analogous area of self-representation and notes with approval sufficient waivers had been found "where defendant was warned of the general danger of proceeding on his own." (*Ibid.*)

It is not until *Mroczko* that specific guidelines for a waiver are discussed. ■ "No particular form of inquiry is required, but, at a minimum, the trial court must assure itself that (1) the defendant has discussed the potential drawbacks of joint representation with his attorney, or if he wishes, outside counsel, (2) that he has been made aware of the dangers and possible consequences of joint representation in his case, (3) that he knows of his right to conflict-free representation, and (4) that he voluntarily wishes to waive that right." (35 Cal.3d at p. 110.) These guidelines are bottomed on federal cases. (*Ibid.*) One of them, *United States* v. *Foster* (1st Cir. 1972) 469 F.2d

---

[3]In this case the trial court, on various occasions prior to trial, asked defendants and their counsel if they had explored the question of potential conflicts. They answered affirmatively. The trial court also asked defendants if they were aware that they were entitled to separate counsel in order to fully protect their individual rights. Each said yes.

1, advances, as a judicial rule, that a court should inquire, inter alia, "whether [defendants] understand that they may retain separate counsel, or if qualified, may have such counsel appointed by the court and paid for by the government." (*Id.,* at p. 5.) *Foster*'s gloss on the admonition has been incorporated into the Federal Rules of Criminal Procedure. It is cited with apparent approval in the Notes of Advisory Committee on Rules to the Federal Rules of Criminal Procedure, rule 44 (18 U.S.C.). ■ Following this authority as suggested in *Mroczko,* a trial court should include in a conflict admonishment the information that, if defendants are unable to afford to retain more than one attorney, separate counsel will be appointed by the court and paid for by the government. With this as background we turn to defendant Bill Sanford's arguments.

Defendant argues that no waiver of conflict should have been permitted because the conflict was "actual" and such a conflict can never be knowingly and intelligently waived. Defendant relies on a civil case, *Klemm* v. *Superior Court* (1977) 75 Cal.App.3d 893, 898 [142 Cal.Rptr. 509]. In *Klemm* one attorney appeared on behalf of both former spouses at a hearing concerning child support, conducted after the interlocutory decree was granted. The wife received payments under the aid to families with dependent children program and the trial court had referred the issue to welfare authorities (see Welf. & Inst. Code, §§ 11484-11485) for their views. They suggested that the husband be ordered to pay $25 per month per child. At the outset of the hearing the trial court inquired about the propriety of dual representation and ultimately declined to permit it despite written consents executed by both former spouses. (*Id.,* at pp. 896-897.) The *Klemm* court granted the former spouses a writ of mandate directing the trial court to reconsider. (*Id.,* at p. 902.) The opinion reasons that client consent could not be given to dual representation "in conjunction with a trial or hearing where there is an actual, present, existing conflict and the discharge of duty to one client conflicts with the duty to another." (*Id.,* at p. 898.) However, the wife could elect to waive her right to pursue child support.[4] Since she did not want child support and the husband opposed it no present conflict was presented and dual representation was permissible if informed consents were shown. (*Id.,* at pp. 899-900.)

■ Here defendant claims that an unwaivable conflict is presented because his counsel and the trial court used the term actual to describe the conflict. However, counsel's elaboration of the nature of the conflict reveals that the case falls within the category which *Klemm* categorizes as a poten-

---

[4]There is no mention of Welfare and Institutions Code section 11477 in *Klemm;* this statute says that receipt of public assistance operates as an assignment by operation of law, of rights to support in behalf of any family member aided.

tial and thus waivable conflict. Under *Klemm,* an actual conflict of interest arises only if either party could take and chose to take the position that the other was the sole possessor of the marijuana found in the marital residence. (Compare *Klemm,* with the test for "actual" conflict of interest suggested in *People* v. *Elston* (1982) 130 Cal.App.3d 721, 734, fn. 4 [182 Cal.Rptr. 30]; taken from *Cuyler* v. *Sullivan* (1980) 446 U.S. 335, 356, fn. 3 [64 L.Ed.2d 333, 351-352, 100 S.Ct. 1708], conc. and dis. opn. of Marshall, J.) In such a circumstance the conflict is not waivable if counsel's duty to one of his clients conflicted with his duty to the other.

The trial court did go wrong in appearing to equate the waivers of actual and potential conflicts. However, defense counsel's explanation of the only conflict brought to the attention of the court reveals it to be hypothetical and hence potential. He explained: "Whenever two parties are represented by the same attorney in fact they withdraw a potential defense, each withdraws the opportunity to accuse the other in effect." Nothing in the record of the trial reveals the materialization of an actual conflict. If such conflict had materialized the trial court would have been under a duty to intervene regardless of the purported waiver of actual conflict by defendants. However, that did not occur and, accordingly, no showing of error is made out.

■ Defendant next argues that the waiver is inadequate because he was not informed by the trial court that if he could not afford to retain separate counsel one might be appointed at government expense. Defendant's trial preceded *Mroczko* but followed *Maxwell* which announced that a waiver of conflict must be shown on the record to be knowing and intelligent. The waiver here is adequate under *Maxwell.* Defendants said they had discussed the possible conflicts with their counsel. They were told they were entitled to separate counsel to fully protect their individual rights. After hearing their counsel explain the manner in which joint representation could impede their individual defenses they said they wanted to be so represented. This is a sufficient on the record warning of the general danger of proceeding with joint representation under *Maxwell.* It was not error to fail to include the explicit and implied list of admonitions subsequently announced in *Mroczko.* We reject the suppositions embedded in defendant's claim that (1) his trial counsel (presumably familiar with his clients' finances) failed to tell him independent counsel might be available at government expense; (2) defendant was unaware of the fact that indigents are entitled to representation at government expense (a fact that is widely known as a result of the *Miranda* admonition); and (3) if defendant were informed of this consideration it might have influenced his decision.

■ Defendant's claim is utterly unsympathetic in view of the particular circumstances of this case. He was convicted of two counts of sale of

marijuana in which his codefendant wife was not implicated. The prospect is zero that he would have fared better at trial if independent counsel had attempted to foist on his wife the possession of the marijuana found scattered throughout his home.

## II-III*

. . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The orders of probation are affirmed.

Regan, Acting P. J., and Sparks, J., concurred.

The petition of appellant Bill Sanford for review by the Supreme Court was denied February 26, 1986.

---

*See footnote 2, *ante*, page 15.