[No. B030388. Second Dist., Div. Six. Dec. 20, 1988.]

RAMIRO ALCOCER, Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Ilan Funke-Bilu for Petitioner.

No appearance for Respondent.

Thomas W. Sneddon, Jr., District Attorney, and Gerald McC. Franklin, Deputy District Attorney, for Real Party in Interest.

## OPINION

**GILBERT, J.**—In a criminal case, a defendant has a right to be represented by an attorney who has no conflict of interest. May a defendant waive this right, even though by doing so he may not receive a fair trial? We hold he may if he knowingly and intelligently waives that right.

### FACTS

Defendant Ramiro Alcocer is charged with lying to the grand jury during the course of an investigation. (Pen. Code, § 118.) Alcocer is alleged to have testified that he was unaware that a former Santa Maria Municipal Court judge had been using drugs. The judge later pled guilty to such charges.

Alcocer retained Attorney Ilan Funke-Bilu to represent him. Funke-Bilu also represents Tommy Jackson in a case in which Jackson pled guilty to possession of drugs for sale. The prosecution has evidence that Jackson sold drugs to the former judge. The prosecution states it may call Jackson to testify that Alcocer was present when Jackson sold drugs to the former judge. Jackson, acting upon advice of Funke-Bilu, has refused to speak to the prosecutor.

On July 24, 1987, the district attorney moved to recuse Funke-Bilu upon the ground of conflict of interest. (See *People* v. *Mroczko* (1983) 35 Cal.3d 86 [197 Cal.Rptr. 52, 672 P.2d 835].) The court suggested independent counsel be retained to advise Alcocer of the hazards of having an attorney with divided loyalties represent him. Attorney Sam Eaton was retained. (*Id.,* at pp. 115-116.)

On October 2, 1987, Eaton reported to the court that he had conferred with both Alcocer and the prosecutor. Apparently Eaton did not speak to Jackson. Eaton stated that he had advised Alcocer that there could be a conflict, and advised him of his rights.

The trial judge granted the motion to recuse counsel. He concluded that by representing Jackson, Funke-Bilu could not adequately cross-examine him were he called to testify for the prosecution. This would prejudice Alcocer.

Alcocer seeks relief by way of extraordinary writ in which he asserts that he is being denied counsel of choice. He states that Eaton has explained the potential conflict of having Funke-Bilu represent him, and that he is willing to waive any conflicts.

## Discussion

A defendant is entitled to representation which is free of conflicting interests. (*Holloway* v. *Arkansas* (1978) 435 U.S. 475, 483, fn. 5 [55 L.Ed.2d 426, 433, 98 S.Ct. 1173].) "Active representation by one attorney of clients with adverse and conflicting interests denies effective assistance of counsel to a defendant caught in the conflict." (*In re Darr* (1983) 143 Cal.App.3d 500, 509 [191 Cal.Rptr. 882].) A court is obliged to consider the ramifications of a possible conflict when counsel has represented a potential prosecution witness. (*Wheat* v. *United States* (1988) 486 U.S. 153, 161 [100 L.Ed.2d 140, 150, 108 S.Ct. 1692, 1698]; *People* v. *Mroczko, supra,* 35 Cal.3d at pp. 111-112; *In re Darr, supra,* 143 Cal.App.3d at pp. 514-515.) "When an attorney attempts to represent his client free of compromising loyalties, and at the same time preserve the confidences communicated by a present or former client during representation in the same or a substantially related matter, a conflict arises." (*United States* v. *Agosto* (8th Cir. 1982) 675 F.2d 965, 971, cert. den. 459 U.S. 834 [74 L.Ed.2d 74, 103 S.Ct. 77]; *United States* v. *Dolan* (3d Cir. 1978) 570 F.2d 1177, 1181.)

In *Wheat* v. *United States, supra,* 486 U.S. at page 163 [100 L.Ed.2d at page 151], the United States Supreme Court held that a trial judge has wide discretion in ruling on a prosecution's motion for recusal of defense counsel with a conflict of interest. The trial court may, therefore, recuse a defendant's lawyer, over the defendant's protest, if there is a conflict, or even a potential for conflict. (*Id.,* p. 161 [100 L.Ed.2d at p. 150].) Here, substantial evidence supports the trial court's ruling that with representation by Funke-Bilu there is the potential of a conflict.

The People argue that *Wheat* compels us to affirm the trial court's ruling because *Wheat* interprets the Sixth Amendment as ensuring that defendants receive a fair trial. This, they contend, takes precedence over ensuring that a defendant be represented by the lawyer whom he prefers. The People further state that, should we change these priorities, we would then give a more narrow interpretation to the Sixth Amendment than has the United States Supreme Court. On the contrary, we give the Sixth Amendment a broader interpretation.

It is true that a lawyer immersed in the shifting sands of conflicting interests may be unable to effectively represent one or all of those interests. This does not mean, however, that we must subordinate the defendant's right to counsel of his choice to his right to a conflict-free attorney. Such a paternalistic treatment of a defendant restricts his Sixth Amendment rights. The choice is up to defendant, provided he is fully informed of his rights, and knowingly and intelligently waives them.

A right that is imposed, as compared to a right that is chosen, is an impoverished right. A right derives its significance and vitality from its being chosen. (See *Matter of Quinlan* (1976) 70 N.J. 10 [355 A.2d 647, 79 A.L.R.3d 205].)

John Stuart Mill observed: "[i]n each person's own concerns his individual spontaneity is entitled to free exercise. Considerations to aid his judgment, exhortations to strengthen his will may be offered to him, even obtruded on him, by others; but he himself is the final judge. All errors which he is likely to commit against advice and warning are far outweighed by the evil of allowing others to constrain him to what they deem his good." (Mill, On Liberty (Bobbs-Merrill ed. 1956) p. 93.)

Ironically, in giving a broad interpretation to the word "right," we make it possible for a defendant to have less protection than he would have under the *Wheat* rationale. Through waiving the right to conflict-free counsel, a defendant may reduce his chances for an acquittal. Such a choice, however, strengthens rather than weakens the right to counsel. Under our holding, a defendant is master of his own fate; it is he, rather than the government, who decides who shall act as his counsel.

■ A court abridges a defendant's right to counsel when it removes retained defense counsel in the face of a defendant's willingness to make an informed and intelligent waiver of his right to be represented by conflict-free counsel.

California decisions "limit *severely* the judge's discretion to intrude on defendant's choice of counsel in order to eliminate potential conflicts, ensure adequate representation, or serve judicial convenience." (*Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 613 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333], italics added.) ■ We have stated that the right to assistance of counsel includes "the right of an accused to be aided by [the] effective assistance of counsel of his own choosing at all critical stages of criminal proceedings." (*Boulas* v. *Superior Court* (1986) 188 Cal.App.3d 422, 431 [233 Cal.Rptr. 487].) Our courts recognize that the right of a defendant "to decide for himself who best can conduct the case must be respected wherever feasible. [Fn. omitted.]" (*Maxwell, supra,* at p. 615.).

■ In *People* v. *Bonin* (1989) 47 Cal.3d 808 [254 Cal.Rptr. 298, 765 P.2d 460], and *People* v. *Easley* (1988) 46 Cal.3d 712 [250 Cal.Rptr. 855, 759 P.2d 490], cases decided after *Wheat* v. *United States,* our Supreme Court reaffirmed the rule that the right to conflict-free counsel may be waived. In *Bonin,* the court stated that "[a]fter the trial court has fulfilled its obligation to inquire into the possibility of a conflict of interest and to act

in response to what its inquiry discovers, the defendant may choose the course he wishes to take. If the court has found that a conflict of interest is at least possible, the defendant may, of course, decline or discharge conflicted counsel. But he may also choose not to do so: 'a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests.' [Citations.]" (47 Cal.3d at p. 837.)

In *Easley*, the court reversed the death penalty phase of defendant's trial because the attorney's conflict of interest deprived the defendant of effective assistance of counsel. The trial court informed defendant of his right to conflict-free counsel, but failed to advise him of the full range of dangers and the possible consequences of being represented by an attorney with a conflict. (*People* v. *Easley, supra*, 46 Cal.3d at p. 730.) The California Supreme Court concluded there could be no finding that defendant knowingly waived the conflict absent an adequate explanation to the defendant of the consequences of the conflict. (*Id.,* at p. 732.)

The *Easley* court characterized article I, section 15 of the California Constitution as affording a defendant greater protection than is the case under federal law. (*People* v. *Easley, supra,* 46 Cal.3d at p. 729, fn. 17.) The court also reaffirmed the proposition that "[t]he right to conflict-free counsel may be waived." (*Id.,* at p. 729.) Had there been an advisement of the dangers of self-representation, and a knowing and intelligent waiver, Mr. Easley would not be looking forward to a new penalty trial.

Although the court's power to remove conflict-ridden counsel may be of immense benefit to a defendant, there also lies the danger of abuse when the court exercises this power. In some cases where there is only the hint of a conflict, the prosecution may seek the removal of counsel solely because that counsel is unacceptable to the prosecution rather than because of a legitimate concern about a possible conflict. (*United States* v. *Washington* (9th Cir. 1986) 797 F.2d 1461, 1465; *Smith* v. *Superior Court* (1968) 68 Cal.2d 547, 559 [68 Cal.Rptr. 1, 440 P.2d 65].) The record does not reveal such motive here.

We recognize the dilemma confronting the trial court. Funke-Bilu's continued representation of Alcocer may later give rise to a claim by Alcocer that, as a result of the conflict, he did not receive effective assistance of counsel. (*Burger* v. *Kemp* (1987) 483 U.S. 776 [97 L.Ed.2d 638, 107 S.Ct. 3114].) On the one hand, it may be necessary for counsel to impeach Jackson with confidential information obtained from Jackson, himself. (See *United States* v. *DeLuna* (W.D.Mo. 1984) 584 F.Supp. 139, 144.) On the other hand, counsel may fail to conduct an effective cross-examination of Jackson for fear of misusing that confidential information. (*United States* v.

*Jeffers* (7th Cir. 1975) 520 F.2d 1256, 1265, cert. den. 423 U.S. 1066 [46 L.Ed.2d 656, 96 S.Ct. 805]; *United States* v. *Agosto, supra,* 675 F.2d at p. 971.)

Trial courts are justifiably concerned that their judgments may be overturned upon a showing on appeal that neither counsel nor court had adequately explained the ramifications of the conflict. (*Wheat* v. *United States, supra,* 486 U.S. at p. 162 [100 L.Ed.2d at p. 150]; *People* v. *Mroczko, supra,* 35 Cal.3d at p. 103; *People* v. *Sanford* (1985) 174 Cal.App.3d 11, 19 [219 Cal.Rptr. 726].) Therefore, it is not surprising that trial courts are loath to allow conflict-ridden counsel to continue to provide representation.

The court in *Wheat* was concerned that "trial courts confronted with multiple representations face the prospect of being 'whipsawed' by assertions of error no matter which way they rule." (*Wheat* v. *United States, supra,* 486 U.S. at p. 161 [100 L.Ed.2d at p. 150].) A convicted defendant, who had previously waived his right to conflict-free counsel, may claim on appeal he did not receive effective representation. The *Wheat* court noted ruefully that some appellate courts seem eager "to entertain ineffective assistance claims from defendants who have specifically waived the right to conflict-free counsel. [Citations.]" (*Ibid.*)

The United State Supreme Court sought to avoid this dilemma by simply giving the trial court broad discretion to recuse an attorney facing a conflict in the face of a defendant's wish to waive the right to conflict-free counsel.

We acknowledge that appeals are taken in a variety of cases however lacking in merit they may be. Appeals from pleas of guilty with full waivers, and from convictions in cases where defendants have represented themselves after *Faretta* waivers (see *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]), are, in the words of W. S. Gilbert, as "plentiful as tabby cats—In point of fact, too many." (Gilbert and Sullivan, *The Gondoliers,* act II.)

Although we do not have the statistics for reversals on appeals from convictions where there has been a knowing and intelligent waiver, such appeals are usually doomed to failure. (See *People* v. *Sumstine* (1984) 36 Cal.3d 909, 922-923 [206 Cal.Rptr. 707, 687 P.2d 904]; *People* v. *White* (1988) 201 Cal.App.3d 1329 [250 Cal.Rptr. 139].) In any waiver situation, a defendant may claim he did not understand the significance of a waiver, but when the waivers are properly given, a defendant can rarely sustain his burden. (*Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 305 [110 Cal.Rptr. 329 [515 P.2d 273]; *White, supra,* at pp. 1344-1345; *In re Moss* (1985) 175 Cal.App.3d 913, 924-926 [221 Cal.Rptr. 645].)

There are also legitimate concerns about the obstacles a trial court may face in obtaining a knowing and intelligent waiver. Many criminal defendants lack the sophistication needed to understand complexities involved where the attorney has a conflict of interest. (Geer, *Representation of Multiple Criminal Defendants: Conflicts of Interest and the Professional Responsibilities of the Defense Attorney* (1978) 62 Minn.L.Rev. 119, 140-141 (hereafter *Multiple Representation*).) "The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." (*Wheat* v. *United States, supra,* 486 U.S. at pp. 162-163 [100 L.Ed.2d at p. 151].) In some cases a court may properly conclude that a waiver cannot be intelligently made. (*People* v. *Mroczko, supra,* 35 Cal.3d at pp. 114-115; see *Multiple Representation, supra,* at pp. 141-142.)

Obstacles to the obtaining of intelligible waivers, however, are not insurmountable. In waiving his right to a conflict-free counsel, it is not necessary for a defendant to understand all the subtle ramifications of a given conflict. (*Maxwell* v. *Superior Court, supra,* 30 Cal.3d at p. 622.) All that is required is that the "danger of proceeding with chosen [conflict-ridden] counsel [be] disclosed *generally* to defendant . . . ." (*Id.,* at p. 619, italics added.) "In the parallel area of self-representation, waivers have been deemed sufficient where defendant was warned of the general danger of proceeding on his own. [Citations.]" (*Id.,* at p. 621.) Thus, a conflict may be waived where defendant is made to understand that his right to effective counsel may be seriously compromised by his being represented by counsel who has a conflict. (*Id.,* at p. 622.)

Before the trial begins, the court may not be in the best position to evaluate the prejudicial consequences of a conflict. (*Wheat* v. *United States, supra,* 486 U.S. at pp. 162-163 [100 L.Ed.2d at p. 151]; *United States* v. *Dolan, supra,* 570 F.2d 1177, 1181-1182; cf. *Maxwell* v. *Superior Court, supra,* 30 Cal.3d at p. 621.) Nor can the court always assume that counsel has taken the necessary steps to ensure that his joint clients understand the consequences of a conflict and that they have made an intelligent waiver of the conflict. (E.g., see *United States* v. *Lawriw* (8th Cir. 1977) 568 F.2d 98, 104; *People* v. *Mroczko, supra,* 35 Cal.3d at pp. 112-113; *In re Hochberg* (1970) 2 Cal.3d 870, 878-879 [87 Cal.Rptr. 681, 471 P.2d 1]; cf. *People* v. *White, supra,* 201 Cal.App.3d at pp. 1338-1339.)

Despite these difficulties, California courts have held that a defendant, upon *proper advisement,* may waive his right to retain counsel free from conflict of interest. (*People* v. *Easley, supra,* 46 Cal.3d at p. 729; *People* v. *Mroczko, supra,* 35 Cal.3d at p. 110; *In re Hochberg, supra,* 2 Cal.3d at pp. 878-879; *People* v. *Chacon* (1968) 69 Cal.2d 765, 774 [73 Cal.Rptr. 10,

447 P.2d 106, 34 A.L.R.3d 454]; *People* v. *White, supra,* 201 Cal.App.3d at p. 1339; *People* v. *Sanford, supra,* 174 Cal.App.3d at pp. 17-18.)

■ "[W]aivers of constitutional rights must, of course, be 'knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' [Citation.]" (*People* v. *Mroczko, supra,* 35 Cal.3d at pp. 109-110.) One may waive only those rights of which he is aware, and cannot waive those of which he is ignorant. (*In re Thomas S.* (1981) 124 Cal.App.3d 934, 939 [177 Cal.Rptr. 742].) "A waiver of rights must be based upon something more than speculation." (*In re Moss, supra,* 175 Cal.App.3d at p. 928.)

■ A waiver of the conflict may be properly taken where the court has "assure[d] itself that (1) the defendant has discussed the potential drawbacks of joint representation with his attorney, or if he wishes, outside counsel, (2) that he has been made aware of the dangers and possible consequences of joint representation in his case, (3) that he knows of his right to conflict-free representation, and (4) that he voluntarily wishes to waive that right." (*People* v. *Mroczko, supra,* 35 Cal.3d at p. 110.)

The court must allow the accused reasonable time to consider its admonition, and must secure from the accused a narrative response that will enable the court to ascertain whether he has, in fact, understood his rights and is willing to waive them. (*United States* v. *Curcio* (2d Cir. 1982) 680 F.2d 881, 888-889; *United States* v. *Garcia* (5th Cir. 1975) 517 F.2d 272, 278; *People* v. *Phillips* (1985) 41 Cal.3d 29, 44 [222 Cal.Rptr. 127 [711 P.2d 423]; *People* v. *Mroczko, supra,* 35 Cal.3d at p. 110.)

■ In the instant case, the court directed Alcocer to confer with independent counsel. Alcocer spoke with independent counsel and stated he wished to retain Funke-Bilu. However, the court did not inquire of Alcocer whether he understood that he had the right to be represented by a lawyer whose sole concern would be that of representing Alcocer's interests. (See *People* v. *Easley, supra,* 46 Cal.3d 712.)

■ We now offer general guidelines for the trial court to follow when confronted with a potential conflict. Once the trial court determines that a conflict may exist, the court should then briefly set forth the basis for its conclusion. The court must advise the defendant that his lawyer may not be able to effectively and adequately represent him. The court must inform him that this means he may not receive a fair trial if the attorney should continue to represent him.

The court should appoint independent counsel as the court did here to confer with the defendant regarding the conflict. If after conferring with

independent counsel the defendant should still wish to continue with his attorney despite the conflict, the court should ask the defendant if he understands that the conflict, or potential conflict, facing his lawyer could prevent his lawyer from representing him effectively or adequately.

If he answers "yes," the court should then ask defendant if the only reason he is keeping his present lawyer is because of financial reasons concerning fees already paid the attorney, or fees owed the attorney. If the defendant answers "yes" to that question, the trial court should inform defendant that if he is financially unable to retain more than one attorney, separate counsel will be appointed by the court and paid for by the government. (See *People* v. *White, supra,* 201 Cal.App.3d at p. 1339; *People* v. *Sanford, supra,* 174 Cal.App.3d at p. 18.)

If the answer to the question is "no," the court should then ask defendant if he understands that, by proceeding with his current counsel, his chances of being convicted are greater than would be the case if he were represented by a conflict-free attorney. The court should also advise defendant that by waiving his right to conflict-free counsel he also waives his right to appeal the issue of incompetence of counsel insofar as it involves the conflict.

The court should then say: "Having been advised of the right to be represented by an attorney free from conflict, and having understood the disadvantages and dangers in being represented by an attorney with a conflict, do you specifically give up the right to be represented by an attorney who has no conflict of interest?" If the defendant answers "yes," the court should then ask: "Do you specifically give up the right to appeal the issue of incompetence of counsel insofar as it involves the conflict?"

This procedure best serves the ends of justice. It respects a defendant's choice, and it permits a case to move forward without a protracted delay. If, on the other hand, counsel with a conflict were always recused, the case would then have to be continued. New counsel would have to be retained or appointed, and given time to become familiar with the case and to prepare for trial. The more complex the case, the longer the continuance. Delays take their toll on the People as well as the defendant. Some witnesses may no longer be available, and those that are still available may have less vivid memories of the events to which they must testify.

The extent to which Funke-Bilu is hindered in his representation of Alcocer is also dependent upon whether Jackson waives the conflict. ■ The court must apprise Jackson of the ramifications of conflict, and

then afford him the opportunity to object to the representation of Alcocer by Funke-Bilu. (*United States* v. *James* (2d Cir. 1983) 708 F.2d 40, 46.)

If such objection is made, and there appears to be a potential conflict, as there is in this case, the court must consider other options. One option might be for the court to employ backup counsel for Alcocer for the limited purpose of cross-examining Jackson. (*United States* v. *Agosto, supra,* 675 F.2d at p. 974.) Such an arrangement would require that Alcocer waive any claim that he had been denied effective counsel insofar as that right was affected by the need to employ backup counsel to conduct cross-examination. (*Ibid.*)

Some federal courts give the trial court leeway to impose limitations upon cross-examination so that disclosure of confidential information may be avoided. (*United States* v. *O'Malley* (7th Cir. 1986) 786 F.2d 786, 790; *United States* v. *Armedo-Sarmiento* (2d Cir. 1975) 524 F.2d 591, 593.) In instances of this kind, the court would have to then obtain specific waivers from Alcocer to consent to have the cross-examination of Jackson limited. (*United States* v. *Cunningham* (2d Cir. 1982) 672 F.2d 1064, 1073-1074; *United States* v. *James, supra,* 708 F.2d at pp. 44-45.) If this procedure proves too cumbersome or impractical, the trial court, in its broad discretion, may decide not to pursue it.

## CONCLUSION

It is not our wish to encourage the violation of ethical standards by attorneys representing defendants in what may be a conflict situation. This danger is present in some cases, but we must also accord a defendant the fundamental right to conduct his defense as he deems appropriate, however wise or foolish such defense may be.

We also accord deference to the trial judge who has the responsibility of determining whether the waiver is knowingly and intelligently made. As Justice Stevens in his dissent in *Wheat* said, "In my view, deference to the trial judge is appropriate in light of his or her greater familiarity with such factors as the ability of the defendant knowingly and voluntarily to waive a potential conflict (including the possibility that a codefendant may be exerting undue influence over the defendant), the character of the lawyers, the particular facts of the case, and the availability of alternative counsel of a like caliber." (*Wheat* v. *United States, supra,* 486 U.S. at pp. 172-173 [100 L.Ed.2d at p. 157] (dis. opn. of Stevens, J.).)

Funke-Bilu may have divided loyalties in this case. Accordingly, we, like the trial court, question whether it is advisable for him to represent

Alcocer. But, we must also consider the right of an accused person to retain counsel of his own choosing. "Criminal defense lawyers are not fungible. The attorney-client relationship '. . . involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty.' [Citation.]" *(Boulas v. Superior Court, supra,* 188 Cal.App.3d at p. 430; see also *Maxwell v. Superior Court, supra,* 30 Cal.3d at p. 613.)

Here the trial court prematurely granted the motion to recuse counsel. With proper advisements and waivers the granting of the motion may have been unnecessary. We must, therefore, remand the matter to the trial court for further proceedings.

Let a writ of mandate issue requiring the trial court to set aside its order recusing Funke-Bilu, and to hold a new hearing in conformance with the views expressed in this opinion. The alternative writ is discharged and the stay of proceedings previously issued by this court is vacated.

Stone (S. J.), P. J., concurred.

**ABBE, J.**—I respectfully dissent.

The issue in this case, as I see it, is whether a defendant in a criminal case may foreclose a trial court from recusing retained counsel who has a potential conflict of interest by purportedly waiving his right to conflict free counsel.

In *People v. Mroczko* (1983) 35 Cal.3d 86, 110, footnote 26 [197 Cal.Rptr. 52, 672 P.2d 835], the California Supreme Court stated that the issue has not been considered directly by it.

However, the United States Supreme Court has recently considered this issue. In *Wheat v. United States* (1988) 486 U.S. 153, 159 [100 L.Ed.2d 140, 148, 108 S.Ct. 1692] the court stated: ". . . the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. [Citations.]" "Thus, where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver . . . ." A trial court, ". . . must be allowed substantial latitude in refusing waivers of conflicts of interest . . . where a potential for conflict exists . . . ." *(Id.,* at pp. 162-163 [100 L.Ed.2d at pp. 150-151].)

The Sixth Amendment to the United States Constitution and article I, section 15, clause 3 of the California Constitution have virtually identical language. I know of no reason why the United States Supreme Court's interpretation of this language should not be applied here.

Under the circumstances of this case, I conclude the trial court did not abuse its broad latitude in making the decision to recuse defense counsel. As the *Wheat* court stated: "The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." (486 U.S. at p. 164 [100 L.Ed.2d at p. 152].)

I would affirm the trial court's order.

On January 19, 1989, the opinion was modified to read as printed above.