[No. F009274. Fifth Dist. May 9, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH WAYNE BURROWS, Defendant and Appellant.

**COUNSEL**

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael J. Weinberger and Ruth M. Saavedra, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

STONE (W. A.), J.—The People charged defendant, Kenneth Wayne Burrows, with the attempted robbery and the murders of Ray Slaven (also known as William Holt) and Thomas Crawford. All counts included a gun use allegation. Additionally, the People alleged two special circumstances: (1) the murders were committed during the commission or attempted commission of a robbery (Pen. Code, § 190.2, subd. (a)(17)(i)), and (2) defendant committed multiple murders (Pen. Code, § 190.2, subd. (a)(3).)

Defendant and his brother, Eldon Burrows, had a joint preliminary hearing, after which the superior court severed their trials. Defendant then sought to be represented at trial by Stevan Noxon, the same attorney who had represented Eldon at the preliminary hearing, but who was no longer Eldon's counsel. The court found a clear conflict of interest and, exercising its discretion, did not allow defendant to proceed with Noxon as counsel.

A jury found defendant guilty of the second degree murder of Ray Slaven and the first degree murder of Thomas Crawford, and not guilty of attempted robbery. The jury found the firearm enhancements and the attempted robbery special circumstance to be not true and the multiple-murder special circumstance to be true. The court sentenced defendant to prison for life without the possibility of parole. Defendant appeals, claiming the court (1) erroneously denied him the right to counsel of choice and (2) erred in three respects regarding jury instructions.

Since we have found that this case must be reversed because the court denied defendant his counsel of choice and he is entitled to a new trial, the facts of the crimes need not be set forth.

## DISCUSSION

Attorney Noxon represented defendant's brother, Eldon, at the preliminary hearing. He discontinued this representation after the preliminary hearing, and the court appointed new counsel to represent Eldon. The trials of defendant and Eldon were ordered severed on March 20, 1987. On April 3, defendant filed a request to substitute Noxon as his retained counsel. Noxon discussed the obvious conflict with both Eldon and defendant, and they wished to waive any error resulting from the conflict. Both men signed written waivers.

The court appointed independent counsel, Tami Sonder, to discuss the conflict problem with Eldon only, and held an in camera hearing on April 30. Present at that hearing were Eldon, his new counsel, Maurice E. Joy,

Jr., and Sonder. Neither defendant nor his counsel was present. Sonder felt there was a true conflict. She discussed every possible "horrible example" with Eldon, but he nevertheless wished to waive the conflict. Joy represented that at that time the defenses of Eldon and defendant were consistent.

The court found a clear conflict based upon Sonder's evaluation and felt it could not go behind that. The court believed it was required to make a discretionary decision. It found Noxon to be quite competent, but his first loyalty was to Eldon and he could not share that loyalty with defendant. The court stated that although it would be speculation at that time, the irreconcilable conflict could possibly result in an unfair trial and the possible deprivation of certain dispositions. The court viewed this not as a prophylactic measure but as an exercise of its discretion. The court stated it would not permit the substitution even if waivers were properly made and did not make further findings regarding the sufficiency of the waivers made by Eldon, defendant and Noxon. Defendant proceeded to trial represented by Deputy Public Defender Gerald Kahl.

In *Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606 [639 P.2d 248, 18 A.L.R.4th 333] the Supreme Court discusses the tension between the rights here in issue. "One due process requirement is that an individual charged with [a] serious crime be represented by competent and independent counsel. Another is that courts generally must not interfere with defendant's informed conclusions as to how his defense ought to be conducted." (*Id.* at p. 609.) These two requirements appear in conflict. (*Ibid.*) The court further discussed these competing interests. "[E]ffective assistance is linked closely to representation by counsel of choice." (*Id.* at p. 613.) It is well recognized "that the constitutional right to counsel includes a reasonable opportunity for those defendants who have the necessary resources to control the designation of their legal representatives." (*Ibid.*) "[C]hosen representation is the preferred representation." (*Id.* at p. 615.) " '[T]he involuntary removal of any attorney is a severe limitation on a defendant's right to counsel and *may* be justified, *if at all,* only in the most flagrant circumstances of attorney misconduct or incompetence when all other judicial controls have failed. . . .' " (*Ibid.*, italics added.)

Although it was argued in *Maxwell* that the court has the power and duty "to protect the integrity of the trial and, thus, confidence in the judicial process" (30 Cal.3d at p. 616), "[w]hen the possibility of significant conflict has been brought to the court's attention and the danger of proceeding with chosen counsel has been disclosed generally to defendant, *he may insist* on retaining his attorneys if he waives the conflict knowingly and intelligently for purposes of the criminal trial." (*Id.* at p. 619, fn. omitted, italics added.)

If the defendant waives the conflict, he has foreclosed that ground for an attack on his conviction. (*Id.* at p. 619, fn. 11.)

In *People* v. *Mroczko* (1983) 35 Cal.3d 86 [197 Cal.Rptr. 52, 672 P.2d 835], two defendants accused of murder proceeded to a joint trial represented by the same counsel. On defendant Mroczko's automatic appeal, the Supreme Court reversed his conviction of first degree murder because the trial court did not properly take a waiver of possible conflict from the defendant to proceed with counsel who was not conflict-free. (*Id.* at pp. 110-111.) "While the right to conflict-free counsel may generally be waived [citations]," the waiver must be knowingly and intelligently made. (*Id.* at pp. 109-110.) "No particular form of inquiry is required, but, at a minimum, the trial court must assure itself that (1) the defendant has discussed the potential drawbacks of joint representation with his attorney, or if he wishes, outside counsel, (2) that he has been made aware of the dangers and possible consequences of joint representation in his case, (3) that he knows of his right to conflict-free representation, and (4) that he voluntarily wishes to waive that right." (*Id.* at p. 110.)

The court in *Mroczko* noted that "[t]he issue of when—or if—a trial court may disqualify joint counsel despite codefendants' expressed desires to continue with single counsel . . . has yet to be considered directly by this court." (35 Cal.3d at p. 110, fn. 26.)

The issue left open by the Supreme Court is very similar to the issue now squarely before us. Respondent urges that the court has the power to preclude such representation if it does so based upon a sound exercise of its discretion. Defendant argues that if he properly waived the conflict, the court is precluded from disallowing him to proceed with that counsel. He contends if the court orders that he cannot proceed with his chosen attorney, it has effectively deprived him of his right to counsel.

The United States Supreme Court addressed this issue in *Wheat* v. *United States* (1988) 486 U.S. 153 [100 L.Ed.2d 140, 108 S.Ct. 1692]. The question raised was the same as that raised here: "the extent to which a criminal defendant's right under the Sixth Amendment to his chosen attorney is qualified by the fact that the attorney has represented other defendants charged in the same criminal conspiracy." (*Id.* at p. 159.) The court began by analyzing the Sixth Amendment right to counsel: "[T]his right was designed to assure fairness in the adversary criminal process. Realizing that an unaided layman may have little skill in arguing the law or in coping with an intricate procedural system [citations], we have held that the Sixth Amendment secures the right to the assistance of counsel, by appointment if necessary, in a trial for any serious crime. [Citation.] We have further

recognized that the purpose of providing assistance of counsel 'is simply to ensure that criminal defendants receive a fair trial,' [citation], and that in evaluating Sixth Amendment claims, 'the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.' [Citation.] Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. [Citations.]" (*Id*. at pp. 158-159 [100 L.Ed.2d p. 148].)

The court rejected petitioner's argument that a waiver by all affected defendants cures any problems created by the multiple representation. (486 U.S. at p. 160 [100 L.Ed.2d at p. 149].)

"[N]o such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice. Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them. Both the American Bar Association's Model Code of Professional Responsibility and its Model Rules of Professional Conduct, as well as the rules of the California Bar Association (which governed the attorneys in this case), impose limitations on multiple representation of clients. See . . . Rules of Professional Conduct of the State Bar of California, Rules 5 and 7, Cal. Bus. & Prof. Code Ann. § 6076 (West 1974). Not only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." (486 U.S. at p. 160 [100 L.Ed.2d at p. 149].) The court was additionally concerned about the willingness of appellate courts to "entertain ineffective-assistance claims from defendants who have specifically waived the right to conflict-free counsel." (*Id*. at p. 162 [100 L.Ed.2d at p. 150].)

The court concluded: "[W]here a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver, and insist that defendants be separately represented. As the Court of Appeals for the Third Circuit stated in *United States* v. *Dolan,* 570 F.2d 1177, 1184 (1978):

" '[W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for

the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver.'

"Unfortunately for all concerned, a district court must pass on the issue of whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.

"For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." (*Wheat* v. *United States, supra,* 486 U.S. at pp. 162-163 [100 L.Ed.2d at pp. 150-151].)

*Alcocer* v. *Superior Court* (1988) 206 Cal.App.3d 951 [254 Cal.Rptr. 72] rejects *Wheat*'s "paternalistic treatment" of the defendant, finding that California gives the Sixth Amendment a broader interpretation, allowing the defendant to be a "master of his own fate." (*Id.* at pp. 956-957.)[1]

The premise of the court's analysis is succinctly illustrated by these statements: "A right that is imposed, as compared to a right that is chosen, is an impoverished right. A right derives its significance and vitality from its being chosen. [Citation.]

"John Stuart Mill observed: '[i]n each person's own concerns his individual spontaneity is entitled to free exercise. Considerations to aid his judg-

---

[1] See *People* v. *Easley* (1988) 46 Cal.3d 712, 729 [250 Cal.Rptr. 855, 759 P.2d 490], footnote 17, as evidence that California courts apply a broader standard than do the federal courts.

ment, exhortations to strengthen his will may be offered to him, even obtruded on him, by others; but he himself is the final judge. All errors which he is likely to commit against advice and warning are far outweighed by the evil of allowing others to constrain him to what they deem his good.' (Mill, On Liberty (Bobbs-Merrill ed. 1956) p. 93.)

"Ironically, in giving a broad interpretation to the word 'right,' we make it possible for a defendant to have less protection than he would have under the *Wheat* rationale. Through waiving the right to conflict-free counsel, a defendant may reduce his chances for an acquittal. Such a choice, however, strengthens rather than weakens the right to counsel. Under our holding, a defendant is master of his own fate; it is he, rather than the government, who decides who shall act as his counsel." (206 Cal.App.3d at p. 957.)

The court noted the severe limitations California has imposed on a trial court's intruding on defendant's choice of counsel (206 Cal.App.3d at p. 957), and noted this rule has been restated recently by the California Supreme Court after *Wheat* in *People v. Bonin* (1989) 47 Cal.3d 808 [254 Cal.Rptr. 298, 765 P.2d 460] and *People v. Easley, supra,* 46 Cal.3d 712. (See *Alcocer v. Superior Court, supra,* 206 Cal.App.3d at p. 957.)

The *Alcocer* court recognized dangers in allowing the court to remove counsel. "In some cases where there is only the hint of a conflict, the prosecution may seek the removal of counsel solely because that counsel is unacceptable to the prosecution rather than because of a legitimate concern about a possible conflict." (*Alcocer v. Superior Court, supra,* 206 Cal.App.3d at p. 958.) The court further recognized the dilemma faced by trial courts because of the concern that if they allow a defendant to proceed with counsel of choice they may be committing reversible error. Nevertheless, *Alcocer* rejected the United States Supreme Court's solution in *Wheat* of giving the trial court discretion to recuse an attorney in favor of allowing an informed waiver by the defendant which includes his waiver of the right to raise the conflict on appeal. (*Id.* at pp. 959-962.)

The *Alcocer* court offered the following guidelines for a trial court confronted with a potential conflict problem: "Once the trial court determines that a conflict may exist, the court should then briefly set forth the basis for its conclusion. The court must advise the defendant that his lawyer may not be able to effectively and adequately represent him. The court must inform him that this means he may not receive a fair trial if the attorney should continue to represent him.

"The court should appoint independent counsel . . . to confer with the defendant regarding the conflict. If after conferring with independent coun-

sel the defendant should still wish to continue with his attorney despite the conflict, the court should ask the defendant if he understands that the conflict, or potential conflict, facing his lawyer could prevent his lawyer from representing him effectively or adequately.

"If he answers 'yes,' the court should then ask defendant if the only reason he is keeping his present lawyer is because of financial reasons concerning fees already paid the attorney, or fees owed the attorney. If the defendant answers 'yes' to that question, the trial court should inform defendant that if he is financially unable to retain more than one attorney, separate counsel will be appointed by the court and paid for by the government. [Citations.]

"If the answer to the question is 'no,' the court should then ask defendant if he understands that, by proceeding with his current counsel, his chances of being convicted are greater than would be the case if he were represented by a conflict-free attorney. The court should also advise defendant that by waiving his right to conflict-free counsel he also waives his right to appeal the issue of incompetence of counsel insofar as it involves the conflict.

"The court should then say: 'Having been advised of the right to be represented by an attorney free from conflict, and having understood the disadvantages and dangers in being represented by an attorney with a conflict, do you specifically give up the right to be represented by an attorney who has no conflict of interest?' If the defendant answers 'yes,' the court should then ask: 'Do you specifically give up the right to appeal the issue of incompetence of counsel insofar as it involves the conflict?' " (*Alcocer* v. *Superior Court, supra*, 206 Cal.App.3d at pp. 961-962.)

The trial court must also apprise other concerned parties of the ramifications of the conflict and afford them an opportunity to object. (206 Cal.App.3d at p. 962.) If an objection is made, the court must consider other options to alleviate the problem. (*Id*. at pp. 962-963.) The court concluded: "It is not our wish to encourage the violation of ethical standards by attorneys representing defendants in what may be a conflict situation. This danger is present in some cases, but we must also accord a defendant the fundamental right to conduct his defense as he deems appropriate, however wise or foolish such defense may be.

"We also accord deference to the trial judge who has the responsibility of determining whether the waiver is knowingly and intelligently made. As Justice Stevens in his dissent in *Wheat* said, 'In my view, deference to the trial judge is appropriate in light of his or her greater familiarity with such factors as the ability of the defendant knowingly and voluntarily to waive a

potential conflict (including the possibility that a codefendant may be exerting undue influence over the defendant), the character of the lawyers, the particular facts of the case, and the availability of alternative counsel of a like caliber.' (*Wheat* v. *United States, supra*, 486 U.S. at p. 173 [100 L.Ed.2d at p. 157] (dis. opn. of Stevens, J.).)

" . . . [W]e must also consider the right of an accused person to retain counsel of his own choosing. 'Criminal defense lawyers are not fungible. The attorney-client relationship ". . . involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty." [Citation.]' [Citations.]" (*Alcocer* v. *Superior Court, supra*, 206 Cal.App.3d at pp. 963-964.)

The line is thus drawn. *Alcocer* dictates that defendant's convictions be reversed. ■ "Deprivation of appellant's right to counsel of his choice 'requires reversal regardless of whether in fact he had a fair trial.'" (*People* v. *Courts* (1985) 37 Cal.3d 784, 796 [210 Cal.Rptr. 193, 693 P.2d 778].) ■ The question of whether defendant could have knowingly and intelligently waived the conflict has no bearing on the conclusion here because the trial court precluded inquiry into this area by its ruling. *Wheat* dictates the convictions should be affirmed.

We are persuaded by language in the recent California Supreme Court case of *People* v. *Bonin, supra*, 47 Cal.3d 808, to conclude that California makes a defendant the master of his fate and allows him to proceed uninterrupted, with the exceptions of flagrant circumstances of attorney misconduct or incompetence (as set forth in *Maxwell, supra*, 30 Cal.3d 606), with counsel of his choice if the parties involved in the conflict properly waive any potential or actual conflicts. In *Bonin* the court reiterated that a trial court must inquire if a conflict is brought to its attention or if it reasonably appears the conflict may be present. (*Id*. at p. 836.) The court must act in response to its inquiry. "In fulfilling its obligation, it may, of course, make arrangements for representation by conflict-free counsel. (*Ibid*.) Conversely, it may decline to take any action at all if it determines that the risk of a conflict is too remote. (*Ibid*.) In discharging its duty, it must act ' ". . . with a caution increasing in degree as the offenses dealt with increase in gravity." ' [Citation.]

"After the trial court has fulfilled its obligation to inquire into the possibility of a conflict of interest and to act in response to what its inquiry discovers, *the defendant may choose the course he wishes to take*. If the court has found that a conflict of interest is at least possible, the defendant may, of

course, decline or discharge conflicted counsel. But he may also choose not to do so: 'a defendant may waive his right to the assistance of an attorney unhindered by a conflict of interests.' " (47 Cal.3d at pp. 836-837, italics added.)

The California Supreme Court in *People* v. *Bloom* (1989) 48 Cal.3d 1194 [259 Cal.Rptr. 669, 774 P.2d 698] again reiterated its concern that a defendant control his fate if he so chooses. In *Bloom* the defendant sought to be cocounsel for himself at the penalty phase of his trial so he could seek the death penalty. His request was granted. (*Id.* at p. 1218.) He raised this as error on appeal. The Supreme Court upheld the trial court's power to grant a midtrial motion for self-representation "[g]iven the importance which the decisions of both this court and the United States Supreme Court have attached to an accused's ability to control his or her own destiny and to make fundamental decisions affecting trial of the action . . . ." (*Id.* at p. 1222.)

Here defendant raised the issue of proceeding with Noxon in a timely and appropriate manner. The court had a duty to allow defendant to proceed with counsel of his choice once it determined the parties affected by the conflict made appropriate waivers knowingly and intelligently. Because the court precluded defendant from going forward with counsel of his choice regardless of the presence of appropriate waivers, the judgment must be reversed. In light of this holding, it is unnecessary to discuss the remaining issues.

## DISPOSITION

The judgment is reversed.

Franson, P. J., and Vartabedian, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 31, 1990.