[No. G015833. Fourth Dist., Div. Three. Jan. 13, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
AHRIMAN ALI PEOPLES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Parts III and IV (except the disposition of the appeal) are not to be published. (Cal. Rules of Court, rule 976.1(a).)

## COUNSEL

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Jeffrey J. Koch and Bradley A. Weinreb, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CROSBY, Acting P. J.**—Did the trial court err in recusing an attorney on its own motion where she appeared on behalf of her brother, accused of assault with a deadly weapon, against her former husband and father of her children, who were themselves percipient witnesses to the altercation? Obviously not. We deal with several other issues in the nonpublished portion of the opinion and affirm.

### I

On August 11, 1993, Reginaldo Gale picked up his two older children (Reginald, then four, and Sarissa, then nine) at the home shared by his ex-wife, Nujya Strawder, an attorney, and her brother, defendant Ahriman Ali Peoples. Peter, the couple's youngest child, stayed behind.

Reginald told his father Peoples had spanked him that morning. Gale called defendant and left a message on his answering machine. He called again the next day and told Strawder he wanted to talk to her brother. They also agreed Gale would pick up Peter on August 13.

The next morning a still angry Gale telephoned defendant and asked about the spanking. Peoples told Gale he spanked Reginald because he lied about breaking a glass. They argued and defendant warned Gale, "you can bring your knives, guns and we can take this to the grave." Gale hung up and left to pick up Peter.

At approximately 9:30 a.m., Gale parked near the driveway, leaving Sarissa and Reginald inside his truck. The garage door was open; and Peoples was sitting inside, holding Peter on his lap. Gale spoke briefly with defendant and took Peter back to the truck. Defendant followed and Gale asked what was happening with him and his son.

Peoples "puff[ed] out his chest" and confronted Gale. The victim pushed him, and a fistfight ensued. Eventually, an exhausted Gale let Peoples go, told him to stop, and claimed he had "had enough at that point." Gale walked toward the front of the truck and bent forward to catch his breath. Peoples went into the garage; and seconds later he returned, wielding a metal automobile camshaft. Gale blocked the initial blow with his right forearm, but the next swing caught him across the forehead. He fell to his knees in the street; and defendant struck him perhaps six to eight times. Gale pleaded with defendant to stop and yelled at Sarissa to call 911.

Motorcycle Officer Dung Nguyen arrived at the scene just after 9:30 a.m. He found Gale bleeding on the ground and Peoples standing near the front of the residence. Gale's injuries required some 450 stitches and left a 1-inch depression on his right forearm. He spent two days in the hospital and missed work for a month. Occasionally, his lower lip quivered and he suffered headaches. Strawder came to visit him on his first evening in the hospital and was "pushing real hard" for him to discuss the case with her. He refused.

Peoples claimed self-defense at trial. Gale started the fight and chased him into the garage. He tried to escape, but tripped and fell to the ground. He used the camshaft to disable Gale and struck him no more than three times. Then he backed off and told Gale, "you were wrong." Sarissa said someone was on the phone, and he went to take the call.

Sarissa testified and admitted discussing the incident with both her parents. Her father argued with Peoples and took the camshaft away from him, but somehow he managed to get it back. Defendant hit her father with the camshaft, and she ran to the garage to call for an ambulance. Peoples came into the garage, spoke with the 911 operator, and went back outside.[1]

Strawder appeared just after the police arrived. She spoke to her daughter about the fight before Sarissa spoke with the police, but did not tell her what to say. Sarissa admitted she had rehearsed her testimony with her mother before trial "so [she] would get used to being in court . . . ."

Defendant's sister, Thommarrier Peoples, testified she listened in on a telephone conversation between defendant and Gale on the morning of August 13. Gale threatened to "take care" of defendant for spanking Reginald. Gale had called and threatened defendant at various times over a two-month period.

---

[1]During the conversation defendant identified himself as Sarissa's father and told the operator he did not need medical attention or an ambulance.

## II

Peoples retained his attorney-sister, Strawder, to represent him in this matter. Strawder is also the victim's ex-wife and the mother of three percipient witnesses. As just noted, another sister was also a defense witness at trial.

On August 31, 1993, the municipal court granted the prosecution's motion to recuse Strawder, ruling she could assume an unspecified role as "advisory counsel." The matter was continued to allow defendant to retain new counsel for the preliminary hearing. In the interim Peoples was indicted, and the matter was transferred to the superior court for arraignment on November 8.

At the arraignment Strawder explained her brother's attorney of choice had "experienced some complications in [another] trial . . . and is not able to appear here today as we had anticipated." Strawder objected to the appointment of the public defender, and the court ruled she would remain as counsel of record until the designated trial judge resolved the matter.

On November 19 the prosecution filed a formal recusal motion in the superior court. Noting Strawder spoke with the victim shortly before and after the attack, might be required to cross-examine her own children about the incident, and prevented the victim from visiting with his children until he obtained a court order, the prosecution argued Strawder's continued representation compromised "the integrity of the criminal justice system" and the conflict could not be waived.

The court agreed and was concerned Strawder might not be able to effectively represent her brother. On its own motion, the court relieved her as counsel of record and appointed the public defender.[2] Defendant objected, but was eventually ordered to cooperate with the public defender assigned to his case.

---

[2]The following exchange occurred: "[The court]: This is the court's motion. Let's forget the People's motion. My question to you as I asked you in chambers is how can you effectively represent your client who is your brother and when the alleged victim in the case is your ex-husband and when witnesses in this case are your children when a family dispute seems to be the center of this entire problem. It just doesn't look right. [¶] We're supposed to stand for justice. This court is part of the administration of justice. What perception would the public have of a defendant being represented by his sister in a case where the defendant allegedly assaulted his sister-attorney's ex-husband in front of children which belonged to the ex-husband and the sister-attorney. Don't you see the problem? [¶] [Ms. Strawder]: It would seem to me this system of justice which is supposed to be founded on impartial review and application of facts to pertinent law but it's irrelevant what people think and what the—if I were to concern myself as an attorney about what people think about matters I'd probably decline a lot of cases. [¶] As I indicated in chambers I feel that as a person who is representing this particular client I have a vested interest, a supreme and most conscientious

■ Peoples contends the trial court erred in recusing counsel on its own motion. Specifically, he argues under California law the court should have advised him of the nature of the conflict and the consequences of proceeding with counsel, inquired whether he was willing to waive his right to conflict-free counsel, and enforced the waiver if it was knowingly and voluntarily made.

■ This case aptly demonstrates the tension between a criminal defendant's right to counsel of his choice and the correlative right to conflict-free counsel. (U.S. Const., 6th Amend.; *People* v. *Bonin* (1989) 47 Cal.3d 808, 834 [254 Cal.Rptr. 298, 765 P.2d 460].) The Sixth Amendment does guarantee a criminal defendant the right to "*effective* assistance." (*People* v. *Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839], italics in original.) But "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant *rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.*" (*Wheat* v. *United States* (1988) 486 U.S. 153, 159 [100 L.Ed.2d 140, 148-149, 108 S.Ct. 1692].)

In *Wheat* the United States Supreme Court ruled trial courts have broad discretion to recuse an attorney facing a conflict regardless of a defendant's desire to waive his right to conflict-free counsel: "[Trial courts] must be allowed substantial latitude in refusing waivers of conflict of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." (486 U.S. at p. 163 [100 L.Ed.2d at p. 151].) In other words, trial courts "must recognize a presumption in favor of [defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. *The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.*" (*Id.* at p. 164 [100 L.Ed.2d at p. 152], italics added.)

dedication to making sure he gets absolute justice in this court and I know that there is no other attorney who will be more effective in representing him and securing his interest than I will be. [¶] [The court]: *I wish the record could pick up the biting sound of this speech you just gave to the court. If it could, it would verify my concern about your ability to effectively represent your brother.* [¶] It's not there. It's not there. The system cannot permit it. On my motion, ma'am, you are relieved." (Italics added.)

In proceeding on his own motion, the judge may have been mindful of the words of this court in *Vangsness* v. *Superior Court* (1984) 159 Cal.App.3d 1087, 1091-1092 [206 Cal.Rptr. 45]: "In matters involving sensitive questions of selection of counsel for indigent defendants . . . the district attorney has little to gain and much to lose in allowing himself to become involved in the matter."

Defendant relies on *People* v. *Burrows* (1990) 220 Cal.App.3d 116 [269 Cal.Rptr. 206] and *Alcocer* v. *Superior Court* (1988) 206 Cal.App.3d 951 [254 Cal.Rptr. 72]. In each case, the Court of Appeal refused to follow *Wheat* and allowed a criminal defendant to waive the right to conflict-free counsel. According to this line of authority, the trial court should advise the defendant of the existence of a potential conflict and appoint independent counsel to confer with defendant on the matter. Should defendant decide to proceed with the possibly conflicted attorney, the court should advise defendant of the consequences of continued representation and the loss of the right to raise an ineffective assistance claim on any appeal. (*Alcocer, supra,* 206 Cal.App.3d at pp. 961-962.)

There is a fatal flaw in defendant's analysis, according to the Attorney General's brief: In the wake of Proposition 115, this court is bound to follow *Wheat,* he claimed. (See Cal. Const., art. I, § 24.)[3] At oral argument he correctly withdrew the argument: In *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 354-355 [276 Cal.Rptr. 326, 801 P.2d 1077], our Supreme Court gutted Proposition 115's attempt to amend the Constitution to require California courts to follow federal law in virtually all aspects of criminal procedure.

*Raven* does teach that deference to federal law is frequently appropriate, however. (52 Cal.3d at p. 353.) And we think this is such a case. We discern no abuse of discretion on the unique facts presented here. Strawder's continued representation would have left her in a totally untenable position. Could she effectively cross-examine her own children and ex-husband for the benefit of her brother, the minors' uncle? The children lived with Strawder after the attack, and she transported them to court proceedings. Strawder attempted to discuss the assault with the victim and rehearsed her daughter so the latter would be ready to testify in court. There was, in fact, a significant possibility Strawder herself would be called as a witness at trial.

---

[3]Article I, section 24 previously provided, "Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution." Proposition 115 added the following paragraph on June 5, 1990: "In criminal cases the rights of a defendant to equal protection of the laws, to due process of law, *to the assistance of counsel,* to be personally present with counsel, to a speedy and public trial, to compel the attendance of witnesses, to confront the witnesses against him or her, to be free from unreasonable searches and seizures, to privacy, to not be compelled to be a witness against himself or herself, to not be placed twice in jeopardy for the same offense, and to not suffer the imposition of cruel or unusual punishment, shall be construed by the courts of this state in a manner consistent with the Constitution of the United States. This Constitution shall not be construed by the courts to afford greater rights to criminal defendants than those afforded by the Constitution of the United States, nor shall it be construed to afford greater rights to minors in juvenile proceedings on criminal causes than those afforded by the Constitution of the United States." (Italics added.)

As *Wheat* put it, courts "have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." (*Wheat* v. *United States, supra,* 486 U.S. at p. 160 [100 L.Ed.2d at p. 149.) Although California may not literally follow that rule and apparently will allow a defendant to waive a conflict that can harm *him* or *her, People* v. *Burrows, supra,* 220 Cal.App.3d 116 and *Alcocer v. Superior Court, supra,* 206 Cal.App.3d 951 are distinguishable on just that basis. Here the court was also concerned for the children of the lawyer and the victim and the appearance of justice itself. Defendant could not waive those considerations.

In *Burrows* defendant wished to be represented at trial by the attorney who had represented his codefendant brother at the preliminary hearing after the cases were severed and the brother obtained new counsel. And even there the court noted, "We are persuaded by language in . . . *People* v. *Bonin, supra,* 47 Cal.3d 808, to conclude that California makes a defendant the master of his fate and allows him to proceed uninterrupted, *with the exceptions of flagrant circumstances of attorney misconduct or incompetence* (as set forth in *Maxwell* [v. *Superior Court* (1982)] 30 Cal.3d 606 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333], with counsel of his choice *if the parties involved in the conflict properly waive any potential or actual conflicts.*" (*People* v. *Burrows, supra,* 220 Cal.App.3d at p. 125, italics added.) Here, of course, counsel's conflict of interest was blatant (*Maxwell* v. *Superior Court* (1982) 30 Cal.3d 606, 617 [180 Cal.Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333]; *Comden* v. *Superior Court* (1978) 20 Cal.3d 906, 915 [145 Cal.Rptr. 9, 576 P.2d 971]) and her children were not competent to waive the conflict and the ex-husband/victim obviously would not.

*Alcocer* is similar to *Burrows* and our own opinion in *Vangsness* v. *Superior Court, supra,* 159 Cal.App.3d 1087. In both cases attorneys had real or imagined conflicts of interest because they might have to cross-examine former clients testifying against current clients. The defendants were improperly not allowed to waive the conflicts, and writs issued in both cases.

As the trial court correctly recognized in this case, however, and to reiterate, Strawder's representation posed a significant threat not only to her responsibilities to her children (both as a lawyer and mother), her brother/client, her ex-husband/victim, but, perhaps, most of all to the integrity of the judicial process. (See *Comden* v. *Superior Court, supra,* 20 Cal.3d at p. 915.) There are no grounds for reversal.

III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . .

Judgment affirmed.

Wallin, J., and Sonenshine, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 16, 1997.

*See footnote, *ante*, page 1592.