[No. D033580. Fourth Dist., Div. One. Apr. 20, 2000.]

In re A.C. et al., Persons Coming Under the Juvenile Court Law.
A.C. et al., Plaintiffs and Appellants, v.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Defendant and Respondent.

In re STEFANY C., a Person Coming Under the Juvenile Court Law.
RICHARD C. et al., Plaintiffs and Appellants, v.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Defendant and Respondent.

## COUNSEL

Richard C., in pro. per., and for for Plaintiffs and Appellants.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**HUFFMAN, J.**—A.C., M.C., and S.C. appeal from an order in which the court refused to delete any reference to them from the juvenile dependency file of their sister Shannon C.[1] The opening brief also states arguments assertedly on behalf of another sister, Stefany C., who is deceased. The brief contends the court erroneously refused to allow Stefany's parents to act on her behalf and for her father, Richard C., to act as her counsel in making a petition under Welfare and Institutions Code[2] section 826. We affirm.

### FACTUAL AND PROCEDURAL SUMMARY

Richard and Christobell J., who never married, had four children, A.C., M.C., S.C., and Stefany. Richard subsequently met Sharon C., and they married in July 1985. In October 1985, Sharon gave birth to Shannon.

In 1986, A.C., M.C., S.C., and Stefany's school reported the girls had serious emotional problems, were withdrawn and cried all the time. From December 1986 to March 1987 Richard and Sharon sought counseling for marital problems, sexual problems, and A.C.'s sexual outbursts. Richard and Sharon divorced in February 1989.

---

[1] At oral argument, A.C., M.C., and S.C. requested that their appeal from the trial court's refusal to delete references to them from Shannon's file be dismissed. We decline to do so.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

In December 1987, Sharon first complained to the San Diego County Health and Human Services Agency (Agency) that Richard sexually molested the girls. Specifically, Sharon alleged that Richard stroked and digitally penetrated Shannon's, A.C.'s, and M.C.'s vaginas while bathing them. A.C., M.C., S.C., and Stefany told a social worker they had "don't tell mommy secrets" about Richard touching them in their vaginal areas. On two occasions, Sharon reported Shannon said "no, stop" or "stop no daddy" and covered her vaginal area when Sharon attempted to change her diaper. In March 1988, A.C., M.C., S.C., and Stefany told a social worker that Richard touched them in their vaginal areas. A.C., S.C., and Stefany also reported that Richard would rub his penis against them when they were sitting on his lap. All five girls had scarring or lacerations in their vaginal areas consistent with nonaccidental genital trauma and penetration or attempted penetration.

In May 1988, the Agency filed petitions on behalf of all five girls under section 300, subdivision (d). The petition filed on behalf of all the minors alleged Richard sexually abused all of them. A true finding as to the petition was made in June.

Richard initially denied the allegations, but subsequently entered nolo contendere pleas as to all five girls in June 1988. The trial court denied Richard's attempt to vacate his nolo contendere pleas in May 1989. We affirmed the trial court's denial of his request to vacate his pleas.[3]

In December 1989, the court, by clear and convincing evidence, found that Richard's continued custody of A.C., M.C., S.C., and Stefany would create a substantial risk of detriment to their physical and emotional well-being. Christobell was given sole legal and physical custody of A.C., M.C., S.C., and Stefany. Richard was only allowed supervised visitation.

Shannon was placed with Sharon. Shannon was adamant about never wanting to see her father because he had "been bad."

On August 31, 1998, A.C., M.C., and S.C. petitioned the court to release and destroy their juvenile dependency files pursuant to section 826, subdivision (a). Richard had become an attorney in 1994 and represented them. Stefany was also named in the petition. However, as she died in April 1997, she was assertedly represented by Richard and Christobell as her successors in interest and by Richard as her attorney.

The Agency objected to the petition because Richard had a conflict of interest in representing the girls, Shannon was not joined as a party, and the

---

[3]*San Diego County Department of Social Services v. Richard C.* (Oct. 15, 1990, D010269) (nonpub. opn.).

parents could not petition for the release or destruction of Stefany's juvenile records because that right is personal in nature and does not extend to representatives.

The court determined that because A.C. and M.C. were adults, they could waive any conflict of interest in Richard's representation of them. Because S.C. was 16, the court appointed counsel for her. After appointed counsel explained the consequences of the waiver to S.C., the court determined that S.C. also knowingly waived any potential conflict of interest by having Richard represent her.

On April 6, 1999, the court granted the petition as to A.C., M.C., and S.C. The court denied the petition as to Stefany because the right to petition for the destruction of a juvenile court file under section 826 is a legal, and not a property, right. The court also denied the request to destroy any reference to A.C., M.C., or S.C. in Shannon's file because Shannon did not join in the action. The court subsequently denied a motion for new trial.

DISCUSSION

I. <em>Shannon's File</em>

A. *Can A.C., M.C., and S.C. Delete Material from Shannon's File?*

■ A.C., M.C., and S.C. contend the trial court erred in refusing to redact any reference to them in Shannon's juvenile dependency file.

Section 826, subdivision (a) states in pertinent part: "After five years from the date on which the jurisdiction of juvenile court over a minor is terminated, the probation officer may destroy all records and papers in the proceedings concerning the minor. [¶] The juvenile court record . . . includes all records and papers, any minute book entries, docket and judgment dockets . . . . [¶] Any person who is the subject of a juvenile court record may by written notice request the juvenile court to release the court record to his or her custody. . . . Any juvenile court receiving the written notice shall release the court record to the person who is the subject of the record five years after the jurisdiction of the juvenile court over the person has terminated . . . ." (§ 826, subd. (a).)

We have located no case that addresses what constitutes "all records" as used in this code section. A.C., M.C., and S.C. argue "all records" means any reference to them in any juvenile dependency file. We disagree.

Section 826 allows for the destruction of files of the person who is the "subject" of the proceeding. The subject of the proceeding can only be the

minor named in the petition. If a person is mentioned incidentally in another's juvenile court file, that person is not the subject of the record because the dependency petition is not about them. Therefore, the statute does not apply to A.C., M.C., or S.C. in relation to Shannon's file.

Further, a person may seek destruction of the file only after the jurisdiction of the juvenile court terminates over that person. In any given petition, the only person over whom the court has jurisdiction is the person named in the petition. If we were to adopt A.C., M.C., and S.C.'s argument, if a person's name appeared in a third person's file, whether or not he or she was subject to the jurisdiction of the court, that person could seek redaction. However, the statute gives permission to petition only to the person who is the named minor in a given petition and over whom jurisdiction has been terminated in that given petition to seek relief.

Additionally, the statute provides no mechanism for the destruction of part of a court file. The incredible difficulty in redacting references to other persons in a third party's record compels the conclusion that the Legislature did not intend for partial redaction in a third party's file. The statute does not provide for the redaction of words, sentences, or paragraphs of a third party's record. Further, the statute does not state who should decide what portions are redacted or who physically shall do the redactions. If the Legislature intended partial redactions, some mechanism to do so would have been provided.

Therefore, based on the statutory language, which refers to the subject of the petition, termination of jurisdiction and which provides no mechanism for partial redaction, the records referred to in section 826 are those of the minor who is named in the petition.

B. *Was There Good Cause to Keep Shannon's File Intact?*

 A.C., M.C., and S.C. contend that because the court found no good cause to retain their files, there was no good cause to leave reference to them in Shannon's file.

Section 826 specifically provides that the court may deny the request to destroy a record if good cause exists to do so. (§ 826, subd. (a).) Here, even if the statute allowed partial redaction, good cause existed not to destroy part of Shannon's file.

First, Shannon is still a minor. She has the right under Code of Civil Procedure section 340.1 to proceed in a civil suit against Richard once she becomes an adult. Her records should remain intact to allow her to do so.

Second, the record does not show Shannon ever received notice of these proceedings. As a matter of due process, Shannon should be allowed to be heard on the issue of whether her file should be altered in any way.

Third, Shannon's dependency petition was initially filed because her siblings were sexually molested, not because of the actual sexual molestation of Shannon, although later references indicate Shannon's petition was amended. Thus, Shannon's file would not make sense without reference to what happened to her siblings.

Last, but certainly not least, Shannon's file should not be purged of all reference to her siblings because of Richard's unwaivable conflict in representing Shannon or any of her sisters. The Agency did not appeal the trial court's acceptance of the waiver of conflict of interest from A.C., M.C., and S.C., and thus we reluctantly accept the court's finding of waiver as to them.[4] However, the egregious conflict of interest that exists between Richard and his daughters is additional good cause to deny broad destruction of Shannon's file.

█ "A trial court's authority to disqualify an attorney derives from the power inherent in every court, '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.' [Citations.]" (*In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 585 [283 Cal.Rptr. 732].)

█ When analyzing the issue of disqualifying an attorney for an alleged conflict of interest, courts consider such factors as the client's right to counsel of his or her choice and the attorney's interest in representing the client. (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 586.) Further, the court has an independent interest in ensuring trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all that observe them. (*People v. Peoples* (1997) 51 Cal.App.4th 1592, 1599 [60 Cal.Rptr.2d 173].)

" 'Where doubt may becloud the public's view of the ethics of the legal profession and thus impugn the integrity of the judicial process, it is the responsibility of the court to ensure that the standards of ethics remain high.' [Citations.]" (*Comden v. Superior Court* (1978) 20 Cal.3d 906, 912 [145 Cal.Rptr. 9, 576 P.2d 971, 5 A.L.R.4th 562].) Therefore, the client's recognizably important right to the counsel of her choice must yield to important considerations of ethics that run to the very integrity of our judicial process.

---

[4]We recognize that the Agency may have believed it did not have standing to do so.

(*Id.* at p. 915.) Simply, the preservation of public trust within the scrupulous administration of justice and in the integrity of the bar is paramount. (*Ibid.*) Accordingly, where the court justifiably finds an actual conflict of interest, "there can be no doubt" it may decline a proffered waiver. (*Wheat v. United States* (1988) 486 U.S. 153, 162 [108 S.Ct. 1692, 1698, 100 L.Ed.2d 140].)

 Here, accepting the waivers causes so much doubt as to the integrity of the process and appears so overwhelmingly improper, that the court should not have accepted the waivers on behalf of A.C., M.C., and S.C. To accept the waivers is condoning Richard's continued victimization of his daughters. The only person who benefits by the destruction of these files is Richard. The sexual molestation of the girls is not their fault, and they should not feel shame that the courts had to protect them. Richard, on the other hand, benefits greatly by the eradication of evidence that he molested five daughters and his admission that he did so. There can be no clearer example of a conflict of interest. Richard's representation of his daughters in seeking to have their files destroyed or redacted strikes at the very integrity of the judicial process. Although we cannot correct what has happened to A.C., M.C., and S.C.'s files, Richard's egregious conflict of interest is sufficient good cause by itself to deny a request for wholesale destruction of Shannon's file.

## II. *Stefany*

### A. *Code of Civil Procedure Section 377.10 et seq.*

The opening brief asserts, putatively on Stefany's behalf, that the court erred by not allowing Stefany's parents the right to proceed on the merits of a section 826 petition on her behalf.

#### 1. *Did Richard and Christobell comply with Code of Civil Procedure section 377.10 et seq.?*

 In order to assert any issues on Stefany's behalf, Richard and Christobell had to comply with the provisions of Code of Civil Procedure section 377.10 et seq.

If a cause of action survives the death of a person entitled to commence it, that cause of action passes to the decedent's successor in interest and the action may be commenced by the decedent's personal representative or by the decedent's successor in interest. (Code Civ. Proc., § 377.30.) However, a person who seeks to commence an action as the decedent's successor in interest, "shall execute and file an affidavit or declaration" under penalty of

perjury, stating (1) the decedent's name; (2) the date and place of decedent's death; (3) that no proceedings are pending in California for the administration of the decedent's estate; (4) either that the declarant is the decedent's successor in interest or is authorized to act on behalf of the decedent's successor in interest; and (5) that no other person has a superior right to commence the action or proceeding for the decedent. (Code Civ. Proc., § 377.32, subds. (a), (b).) Further, if the decedent's estate was administered, the declarant must produce a copy of the final order showing distribution of the decedent's cause of action to the successor in interest. (Code Civ. Proc., § 377.32, subd. (a)(4).)

The record does not indicate that either Richard[5] or Christobell fulfilled the requirements either below or here. Accordingly, neither Richard nor Christobell could proceed on Stefany's behalf.

Additionally, Code of Civil Procedure section 377.33 provides, "[t]he court in which an action is commenced . . . may make any order concerning the parties that is appropriate to ensure proper administration of justice in the case, including appointment of the decedent's successor in interest as a special administrator or guardian ad litem." The Law Revision Commission comment to that section states: "The court in which the action or proceeding is pending has authority to resolve questions concerning the proper parties to the litigation and to make conclusive and binding orders, including determinations of the right of a successor in interest to commence or continue an action or proceeding. . . ." (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc. (2000 supp.) foll. § 377.33, p. 44.)

Thus, had Richard and Christobell followed proper procedure, the court also had to decide whether they could proceed as Stefany's successors in interest. Given the manifest conflict of interest apparent here, whether the court would have allowed the parents to proceed is questionable at best.

### 2. Does the cause of action survive death?

Even assuming Richard or Christobell were able to execute the necessary declarations to proceed on Stefany's behalf and the court gave them permission to do so, a cause of action under section 826 does not survive the death of the person who can bring the petition.

Code of Civil Procedure section 377.20 provides, "[e]xcept as otherwise provided by statute, a cause of action for or against a person is not lost by

---

[5]Christobell had sole legal custody of Stefany, therefore giving her the sole right to make decisions about Stefany's health, welfare, and education. (Fam. Code, § 3006.) Despite that legal custody, we assume for purposes of this argument, without deciding it, that Richard was entitled to inherit half of Stefany's estate under Probate Code section 6402, subdivision (b), because his parental rights were not terminated.

reason of the person's death . . . ." However, those causes of action that survive death are subject to Probate Code section 7000. (Code Civ. Proc., § 377.30.)

Probate Code section 7000 provides that upon the decedent's death, his or her property passes to the person to whom it is devised in the decedent's last will or as prescribed in the laws governing intestate succession.[6] Therefore, a cause of action only survives death if it relates to such property as may be inherited. We have found no case that addresses whether the right to petition under section 826 is inheritable property.

The Probate Code indicates that property transferred upon a decedent's death is that which has some monetary value or is tangible. (See, e.g., Prob. Code, §§ 13002 [holder of property with respect to any particular item of property or person owing money to the decedent], 13004 [particular item of property defined as that sought to be collected, transferred or received], 13050 [exclusions in determining property value], and 13100 [transfer of personal property without probate when value does not exceed $100,000].)

In 1997, the Supreme Court stated the Legislature intended certain causes of action survive death by adopting the Law Revision Commission's recommendation that the survival statute (former Prob. Code, § 573) should be expanded to include actions for personal torts that do not result in physical injury, such as malicious prosecution, false imprisonment or defamation. (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 298-299 [63 Cal.Rptr.2d 74, 935 P.2d 781].) However, all of the causes of action that the Supreme Court discussed as surviving death are torts with a monetary or anticipated monetary value. A petition under section 826 confers no pecuniary right and is not a tort. All of the rights addressed in Code of Civil Procedure section 377.10 et seq. address either the decedent's right to proceed with a cause of action to collect money or the decedent's monetary liability. The right to proceed under section 826 has no monetary value and thus is not the type of material to which a successor in interest gains title under Probate Code section 7000. Therefore, the right to petition for the release of a juvenile court file does not survive death.

Further, the language of section 826, subdivision (a) also indicates that the Legislature did not intend this cause of action to survive the named minor's death. In pertinent part, that section provides, "[a]ny person who is the subject of the juvenile court record may by written notice request the juvenile court to release the court record to his or her custody." Had the Legislature wished to allow a successor in interest or legal representative to

---

[6]We assume Stefany died intestate.

proceed under this section, the Legislature could have expressly stated that intent.

Finally, the fact that the file exists in paper form does not transform the right to petition under section 826 into inheritable property. The issue is whether the right to proceed to have the file destroyed is inheritable, not the right to the hard copy of the file itself. In any event, the actual papers in the court file do not belong to any party once filed with the court. To the extent they belong to anyone, it is the court itself. The fact that a party needs permission to destroy the records under section 826 proves that the hard copies do not "belong" to the petitioner.

B. *Conflict of Interest*

 Even if Code of Civil Procedure section 377.10 allowed Richard to proceed as Stefany's legal representative or successor in interest, and the right to petition survived Stefany's death, Richard still could not represent her.

When reviewing an order regarding disqualification, we defer to the trial court's decision, absent an abuse of discretion. (*In re Complex Asbestos Litigation, supra,* 232 Cal.App.3d at p. 585.) As stated above, Richard has a manifest conflict of interest with Stefany. Further, because Stefany is deceased, she cannot waive any conflict of interest. Even if Stefany's alleged legal representatives, Richard and Christobell, could waive the conflict of interest, which, given the facts of this case, they could not, the court has no need to accept this waiver for the reasons stated above. Based upon the unwaivable conflict of interest, the trial court could reasonably deny Richard standing to address the destruction of the juvenile records of the deceased child whom he has been adjudicated (in a valid final order) to have molested. We find no abuse of discretion.

## DISPOSITION

The judgment is affirmed. The clerk is directed to send a copy of this opinion to the California State Bar.

Kremer, P. J., and Nares, J., concurred.

A petition for a rehearing was denied May 18, 2000.