Filed 1/14/25  In re Lavender D. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re LAVENDER D., a Person Coming Under the Juvenile Court Law. | B336673 |
| | (Los Angeles County Super. Ct. No. 22CCJP02431E) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ANNE L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Karen B. Stalter, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

## INTRODUCTION

Mother Anne L. appeals from a disposition order granting father D.J. sole legal and physical custody of their child, Lavender D., and terminating jurisdiction.  On appeal, Anne does not challenge the jurisdiction findings or the order granting sole physical custody of Lavender to D.J.  Anne challenges only the legal custody order, contending the juvenile court improperly based its order on the mistaken conviction that Anne would be able to "take" Lavender from D.J. if the court granted joint legal custody.  "'We uphold judgments if they are correct for any reason, "regardless of the correctness of the grounds upon which the court reached its conclusion." [Citation.]  "It is judicial action and not judicial reasoning which is the subject of review."'" (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876.)  The juvenile court did not abuse its discretion when it granted D.J. sole legal custody.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Anne has six children:  A.L., Alondra L., Allan L., Lance A., Milo L., and Lavender.  Lavender was born in November 2023.  At the time of Lavender's birth, a dependency proceeding involving Alondra, Allan, Lance, and Milo was ongoing.  All six of Anne's children have been removed from her custody.  Anne has not reunified with any of the children.

On November 21, 2023, the Los Angeles County Department of Children and Family Services (Department) filed a petition alleging Lavender was a child described under Welfare and Institutions Code section 300, subdivisions (a), (b), (d), and (j).[1] The juvenile court detained Lavender from Anne and placed her with D.J., who lived at the paternal great-grandmother's home. Lavender lived with D.J. throughout the proceedings and was observed to be free of marks and bruises, and appropriately groomed each time the Department conducted a home visit.

A. *Jurisdiction Findings*

On February 13, 2024, the juvenile court conducted the jurisdiction and disposition hearing. The juvenile court found D.J. to be non-offending. It sustained as pleaded the allegations for Counts b-8 to b-9 and j-1 to j-11 against Anne. On appeal, Anne does not contest these jurisdiction findings by the juvenile court.

Counts b-8 and j-8 alleged, in pertinent part, that Anne "is a current abuser of marijuana and alcohol, which renders the mother incapable of providing regular care and supervision of the child. On 06/20/2022 and on prior occasions, the mother was under the influence of alcohol while the child's siblings [Alondra, Allan, Lance, and Milo] were in the mother's care and supervision. The siblings [four-year old] Lance and [newborn] Milo were of such young age as to require constant care and supervision and the mother's substance abuse interferes with the mother providing regular care and supervision of the siblings. The siblings Alondra and Lance were dirty and smelled as if they

---

[1]     All further references are to the Welfare and Institutions Code unless otherwise specified.

3

had not been bathed in several weeks. There was dirt on the sibling Lance's legs, feet, and face."

Counts b-9 and j-9 alleged, Anne "has a history of mental and emotional problems, including diagnoses of Post-Traumatic Stress Disorder, Depression, Anxiety, and Bi-polar Disorder and a history of aggression and suicidal ideations, which render the mother incapable of providing regular care and supervision of the child. The mother failed to seek treatment for the mother's mental and emotional problems."

Counts j-1 to j-3 alleged Anne physically abused the half-siblings. On June 20, 2022, Anne struck Allan's head with "a metal hammer, inflicting a large, open, bleeding, swollen laceration to the sibling's forehead. The mother provided inconsistent statements as to how the sibling sustained the sibling's injury. On prior occasions, the mother struck the sibling with a hammer and with the mother's hand." The counts further alleged Anne similarly physically abused Lance, Alondra, and Milo by striking them on prior occasions with a hammer and her hand.

In Counts j-4 to j-6, the petition alleged that on June 21, 2022, Lance required stitches for the "large, open, bleeding, swollen laceration to the sibling's forehead." Lance had also contracted impetigo on his upper lip (a bacterial infection that typically causes sores in infants and children) and Milo had contracted conjunctivitis. Anne failed to seek medical treatment for the children.

Count j-7 alleged Anne created a "detrimental and endangering home environment . . . in that on 06/21/2022, the home was found to be messy, disorganized, and cluttered. The front door of the home was broken. There was a large pile of clothes in the corner of the room and several belongings were all over the floor, making it difficult to walk around the room. The

4

room was dirty, including having piles of dirty clothes throughout the room, and emitting a strong odor of urine."

Count j-10 alleged, "On one or more prior occasions, [Anne] placed the child's siblings [Alondra, Allan, Lance, and Milo] in an endangering situation.  The endangering situation consisted of, but was not limited to, having sexual intercourse in the presence of the siblings."  Count j-11 alleged, "On one or more occasions, [Anne] sexually abused the siblings, [Alondra and Allan]. . . .  The mother would [also] bring people over to the home while drunk and have sexual intercourse with these persons in the presence of the siblings, where the siblings would watch."

Each of the counts also alleged Lavender's half-siblings were prior dependents of the juvenile court and received permanent placement services due to the issues specifically identified in the count.  These issues endangered their physical and emotional health and safety and placed them at risk of serious physical harm, damage and danger.

The court based its jurisdiction findings on the Department's reports, admitting into evidence the Department's detention report, jurisdiction and disposition report, and last minute information, as well as two progress letters submitted by Anne.  The Department described the evidence, including statements by Allan and Alondra, supporting the physical and sexual abuse allegations against Anne.  Anne denied the abuse.  She claimed she only threw things such as a pillow, teddy bear, phone, or ball at the children and their injuries resulted from jumping off the bunk bed.  According to Anne, the children would have died if she had hit them as the petition alleged.  She told the Department's investigator, "'As angry as I used to be, I would have killed them.  I've done damage to adults with my hands.'"

Although she admitted the children observed her engaging in sexual acts with her partner because she was "'so lit'" and

5

already "'in the middle of it,'" Anne vehemently denied engaging in sexual activity with Allan or Alondra. She claimed the children were referring to Allan's father, known as "Big Allan," when they described her sex acts with "Allan." Anne admitted to her therapist, however, that she "'did really bad things'" and had the children "'participate in really bad things.'" When asked why Anne continued to deny these acts to the Department, her therapist explained, "'People don't like that thrown in their face. DCFS has a history of reminding you of your problems. If you have a history of being scrutinized, you have your guard up.'"

The Department also documented Anne's failure to comply with the case plan in the half-siblings' case, including her failure to comply with drug testing, her refusal to address the sexual and physical abuse of the half-siblings, and the Department's suspicion she stopped taking medication for her mental health issues.

When the Department interviewed D.J., he stated he was aware of the dependency proceedings involving Anne's other children. Anne told him the case was opened because she threw some objects at the children when they refused to listen to her and the children saw her having sex with a man because they all shared a room. He expressed his concern when the children's social worker disclosed the extent of the half-siblings' case findings against Anne. He agreed to take the day off to help care for the baby and ensure his family would be able to care for her once he returned to work the next day. He denied any history of substance or alcohol abuse and disclosed he last smoked marijuana the day before Lavender was born. According to the paternal great-grandmother, Anne visited with Lavender only once during the proceedings.

At the jurisdiction and disposition hearing on February 13, 2024, Anne argued she was "not the same mother she was in

2022" because she had made progress in addressing her substance abuse and mental health issues by participating in programs. She also had taken parenting classes and now understood what discipline was appropriate. She asserted Lavender did not test positive for drugs at the time of her birth and she was observed to be clean and appropriately cared for when the Department made their initial visit shortly after her birth. Anne continued to deny sexually abusing Allan or Alondra.

The juvenile court made the jurisdiction findings as described above, dismissed other allegations not described in this opinion, and found by clear and convincing evidence that return of Lavender to Anne would be detrimental to the child. The court further found there were no safety issues related to D.J.'s custody of Lavender and that court supervision was therefore no longer necessary. The court terminated jurisdiction with a disposition order giving D.J. sole legal and physical custody with monitored visitation for Anne.

The court explained it based its ruling on "the history of this case." It did not credit Anne's assertion she was taking the medication prescribed to treat her mental health issues. It also noted Anne did not comply with the court-ordered drug tests and had not completed the sexual predator program. The court found Anne was in denial about the seriousness of the physical and sexual abuse allegations. The court expressly observed, "This is a very young child who has no ability to protect herself." In making its disposition order, the court stated, "The court's concern, joint legal custody, gives [Anne] the ability to take her daughter, that is not in the child's best interest, given the mother's need to continue to make progress in her case plan."

The juvenile court signed and entered exit orders consistent with its disposition on February 16, 2024. Anne timely appealed.

7

# DISCUSSION

A. *Standard of Review and Governing Law*

"'[T]he juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case.' [Citation.] We review a custody (or 'exit') order . . . for abuse of discretion, and will not disturb the order 'unless the [juvenile] court ""exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.""""" [Citation.] ""The appropriate test for abuse of discretion is whether the [juvenile] court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing [juvenile] court has no authority to substitute its decision for that of the [juvenile] court.""""" (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094.) A juvenile court abuses its discretion if no substantial evidence supports its decision. (See *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1066.)

Section 362.4, subdivision (a), states: "If the juvenile court terminates its jurisdiction over a minor who has been adjudged a dependent child of the juvenile court . . . , the juvenile court on its own motion, may issue . . . an order determining the custody of, or visitation with, the child."[2] "'Sole legal custody' means that

---

[2] We observe the juvenile court had authority under section 361.2, subdivision (b), to issue its order making D.J. the legal and physical custodian of Lavender and to terminate dependency jurisdiction. Because section 361.2 addresses custody orders when a child is removed from a custodial parent and placed with a previously noncustodial parent, it would appear to be the more direct basis for the court's order. Neither the parties nor the juvenile court, however, relied on

8

one parent shall have the right and responsibility to make the decisions relating to the health, education and welfare of a child." (Fam. Code, § 3006; see *In re A.C.* (2000) 80 Cal.App.4th 994, 1003, fn. 5.) "When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; see *In re Chantal S.* (1996) 13 Cal.4th 196, 206 [in making a custody determination the juvenile court focuses on the best interests of the child]; *In re N.M., supra,* 88 Cal.App.5th at p. 1094.) Upon termination of dependency jurisdiction, there is no presumption that joint legal and physical custody is in the child's best interest. (See *In re Chantal S.,* at p. 206.)

B.   *The Juvenile Court Did Not Abuse Its Discretion When It Granted Sole Legal Custody to D.J.*

Anne's only contention on appeal is that the juvenile court based its legal custody ruling on an error of law. That is, the court expressed its concern that "joint legal custody, gives [Anne] the ability to take her daughter." There is no dispute joint legal custody does not give Anne the ability to take Lavender from D.J. (See Fam. Code, § 3003 [joint legal custody "means that both parents shall share the right and the responsibility to make the decisions relating to the health, education, and welfare of a child"].) On appeal, however, we are required to affirm the court's legal custody disposition if it is correct regardless of the

---

section 361.2 as a basis for the court's custody order. In all events, whether we evaluate the order at issue in this appeal under sections 361.2 or 362.4, the outcome is the same.

correctness of its reasoning.[3]  (See *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 ["We are required to uphold the [custody] ruling if it is correct on any basis, regardless of whether such basis was actually invoked."]; *In re Daniel B.* (2014) 231 Cal.App.4th 663, 675, fn. 4; *In re Jonathan B., supra,* 5 Cal.App.4th at p. 876.)

We therefore consider whether the juvenile court made an arbitrary, capricious, or patently absurd determination when it decided it was in Lavender's best interest to have D.J. alone make decisions regarding her health, education, and welfare.  We conclude there was no abuse of discretion.

Here, the record supports a finding that Anne's participation in making important decisions relating to Lavender's health, education, and welfare would not be in Lavender's best interests.  Anne does not challenge the juvenile court's finding she failed to seek medical attention for the half-siblings when they needed it.  It is also undisputed Anne created

---

[3]  We are not persuaded by Anne's contention that a "disposition based on an error of law constitutes an abuse of discretion.  (*In re D.M.* (2021) 71 Cal.App.5th 261, 271.)."  In *In re D.M.,* the trial court applied improper criteria to determine whether the beneficial parental relationship exception applied to avert the termination of parental rights.  As a result, remand was necessary for the trial court to consider the proper criteria to exercise its discretion.  (*Id.* at p. 271.)  Here, there is no similar error of law.  The juvenile court's comments from the bench showed it understood the proper focus was on "the child's best interest."  Moreover, its mistaken belief that joint legal custody would allow Anne to take Lavender from D.J. was not the only reason for its ruling.  As discussed below, the court set out the factual basis for its ruling in extensive detail.

a detrimental home environment that smelled of urine and was dirty. Further, the children looked like they had not been bathed in weeks. Coupled with Lavender's inability to care for herself due to her age, these findings alone support the conclusion that it is not in Lavender's best interest to allow Anne to participate in making health, education, and welfare decisions for a baby.

Additionally, the evidence supports the juvenile court's finding that it was not in Lavender's best interest to grant joint legal custody, "given the mother's need to continue to make progress in her case plan." The record shows Anne's efforts to address the issues that led to removal of her other children were incomplete or otherwise lacking. She admitted and the juvenile court found she had a history of mental and emotional disorders, including post-traumatic stress disorder, depression, anxiety, bi-polar disorder, aggression, and suicidal ideations, for which she failed to seek treatment. The court found credible the Department's suspicion that Anne was not taking the medication prescribed to address her mental health disorders.

The court also found Anne failed to address her substance abuse. Despite asserting she had been sober for two years, Anne admitted she was "'so lit'" during sexual intercourse she did not stop even when she observed the children in the same room. Anne's repeated failure to drug test also indicates she had not fully addressed her substance abuse issues. Further, Anne's continued denial of physical abuse, claiming she only threw things at the children when they failed to listen to her, demonstrates a lack of understanding of appropriate parenting to ensure the safety of her children. Anne's inability throughout these proceedings to reunify with any of her children, her failure to make progress in overcoming the problems leading to their

removal, her denial of the severe physical and sexual abuse she inflicted on the half-siblings, as well as her failure to complete the sexual predator program support the court's finding it was not in Lavender's best interest to order joint legal custody.

By contrast, it is undisputed Lavender was safe in D.J.'s care. D.J. actively made decisions that demonstrated his concern for Lavender's health and welfare, including taking the day off work to care for Lavender when he learned about the findings against Anne and ensuring the paternal relatives were available to look after Lavender when he returned to work. D.J. also denied any history of alcohol or substance abuse and tested negative at a court-ordered drug test on January 31, 2024.

Given these circumstances, the trial court did not abuse its discretion when it granted sole legal custody to D.J. (See *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 713 [award of sole legal custody to father upheld where, among other reasons, mother failed to follow through on drug rehabilitation referrals and to submit to drug tests, irregularly visited with child, and had an extensive history of untreated serious mental illness].)

We are not persuaded the juvenile court abused its discretion in making its decision because Anne had made some progress "in acknowledging the harm that she caused Lavender's half-siblings, her progress in addressing her substance abuse and mental health issues, and her actions to prepare for the care of Lavender." As discussed above, the programs and classes Anne participated in are not enough to require reversal of the juvenile court's order. The record supports the court's finding she was not taking the medication prescribed for her mental health disorders, her substance abuse remained a problem, and she continued to deny she physically or sexually abused Lavender's half-siblings.

12

Under these circumstances, we cannot say the juvenile court abused its discretion.

## DISPOSITION

The disposition order granting sole legal and physical custody to D.J. is affirmed.

MARTINEZ, P. J.

We concur:

FEUER, J.

PULOS, J.*

---

* Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13